*In re* SLATTERY.

1. GRAND JURY—ONE-MAN GRAND JURY—STATUTES.

An examination by the circuit judge under statutes providing for the investigation of alleged crimes within the jurisdiction of the court, under the so-called one-man grand-jury statute, is similar to that of a grand jury (3 Comp. Laws 1929, § 17217 *et seq.*).

2. CONSTITUTIONAL LAW—DELEGATION OF POWERS.

The executive, legislative and judicial departments of the government must be kept separate and one department cannot delegate its duties to another (Const. 1908, art. 4).

3. GRAND JURY—JUDICIAL INQUIRY.

The proceeding before a grand jury constitutes "a judicial inquiry" of the most ancient lineage.

4. CONSTITUTIONAL LAW—CONSERVATORS OF THE PEACE—POWERS.

Justices of the Supreme Court, circuit judges and justices of the peace are conservators of the peace within their respective jurisdictions and, as such, may apprehend offenders against the criminal laws of the State, hold examinations and commit, bind over, or hold to bail persons accused of crime (Const. 1908, art. 7, § 18).

5. JUDGES—CIRCUIT JUDGES—CONSERVATORS OF THE PEACE.

A circuit judge is ineligible for any other office than a judicial office for the term for which he is elected and for one year thereafter but is a conservator of the peace by virtue of the fact that he is a circuit judge (Const. 1908, art. 7, §§ 9, 18).

6. SAME—CIRCUIT JUDGES—ONE-MAN GRAND JURY.

A circuit judge, conducting a one-man grand-jury proceeding, is neither a prosecuting attorney, policeman or detective but is acting in a judicial capacity (3 Comp. Laws 1929, § 17217 *et seq.*).

7. GRAND JURY—WITNESSES—CONTEMPT—INSPECTION OF RECORDS.

Witness before so-called one-man grand jury who has been adjudged guilty of contempt by circuit judge in open court after adjournment of grand-jury proceeding which such circuit judge had theretofore conducted was not entitled to a full inspec-

tion of the records of the examination of such witness before the grand jury, since to do so would seriously interfere with, and jeopardize, the work of the grand jury (3 Comp. Laws 1929, § 17218).

8. WITNESSES—SELF-INCRIMINATION—SILENCE—CONTUMACY.

A witness himself is not the sole arbiter of the incriminating nature of the testimony he is asked to give and where it is perfectly clear that an answer cannot incriminate, silence is contumacious.

9. SAME—REMOTE DANGER OF INCRIMINATION.

Remote danger of incrimination, as a rule, is not sufficient to excuse a witness from testifying.

10. CONTEMPT—ONE-MAN GRAND JURY—BANK VICE-PRESIDENT—LOBBYIST—EVASIVE ANSWERS.

Vice-president of bank who had been lobbying for several months against the passage of a certain bill pending in the legislature, who had repeatedly contacted various members of the legislature and who was a witness at a so-called one-man grand-jury proceeding where he, asked whether or not a certain legislator made an offer to him to change his vote for a consideration at an approximate time and at a definite place, gave false or evasive answers after making an inquiry as to whether or not he had to answer any question that might incriminate him, was properly adjudged guilty of contempt by the circuit judge in open court after adjournment of the grand-jury proceeding (3 Comp. Laws 1929, § 17217 *et seq.*).

11. SAME—PERJURY IN PRESENCE OF COURT.

The fact that perjury is a crime for which one committing it may be tried and punished does not necessarily establish that when committed in the presence of a court it may not, when exceptional conditions so justify, be the subject matter of a punishment for contempt; the one act constituting two offenses, one against the State and the other against the court.

12. SAME—REFUSAL TO ANSWER—EVASIVENESS.

A witness is guilty of contempt of court not only where he refuses to tell what he knows but where he gives an answer designed to fob off inquiry.

13. SAME—REFUSAL TO ANSWER—EVASIVENESS.

The refusal to answer or the giving of an evasive reply obstructs the work of a judge or jury which, in an orderly manner, is seeking to ascertain whether a complaint is true and certain crimes have been committed.

14. CERTIORARI—RETURN—FINDINGS—EVIDENCE.

On certiorari the return must be taken as true as the reviewing court is not the trier of the facts, merely examining the testimony to see if there is any evidence to support the finding.

15. CONTEMPT—FINDINGS—EVIDENCE.

In habeas corpus proceeding with accompanying certiorari to circuit judge who in open court had sentenced witness before so-called one-man grand jury to jail for contempt committed while court was sitting as jury, finding of circuit judge that the witness had given false and evasive answers is supported by record (3 Comp. Laws 1929, § 17217 *et seq.*).

16. COURTS—JUDGES—JURISDICTION—ONE-MAN GRAND JURY.

When a judge sits in court, the words "court" and "judge" are used interchangeably, and where one·of two circuit judges in the same circuit took jurisdiction in a so-called one-man grand-jury proceeding, he was performing an important judicial duty and had power to compel observance of judicial authority while so acting (3 Comp. Laws 1929, § 17217 *et seq.*).

17. SAME—POWERS OF JUDGE IN ONE-MAN GRAND-JURY PROCEEDING.

In conducting a so-called one-man grand-jury proceeding, a judge may require examination of persons he may require to attend and may call such assistants from the bar or otherwise as he may desire (3 Comp. Laws 1929, § 17217 *et seq.*).

18. CONTEMPT—REMAND.

Upon affirmance of conviction on charge of contempt for giving false and evasive answers to circuit judge in the course of a one-man grand-jury proceeding, witness is remanded to custody of sheriff to complete his sentence unless he purges himself of such contempt to the satisfaction of the circuit judge (3 Comp. Laws 1929, § 17217 *et seq.*).

Habeas corpus proceedings by Francis P. Slattery, with accompanying writ of certiorari to Leland W. Carr, Ingham Circuit Judge, to obtain release from Ingham County Jail. Submitted December 1, 1944. (Calendar No. 42,917.) Petitions dismissed January 4, 1945. Rehearing denied February 20, 1945. Certiorari denied by Supreme Court of the United States June 11, 1945.

*Wm. Henry Gallagher* and *Harry D. Hubbard,* for petitioner.

*Kim Sigler,* Special Prosecutor, *Victor Anderson,* Prosecuting Attorney, and *H. H. Warner,* Special Counsel, for defendant.

*Fred R. Walker* and *Pierce, Planck & Ramsey, amici curiae.*

BUTZEL, J. In accordance with section 3 *et seq.,* of chapter 7 of the code of criminal procedure of the State of Michigan, the same being 3 Comp. Laws 1929, § 17217 *et seq.* (Stat. Ann. § 28.943 *et seq.*), the Honorable Leland W. Carr, a circuit judge of the county of Ingham, required the attendance of Francis P. Slattery, referred to herein as petitioner, as a witness to testify in regard to certain crimes that were alleged in a formal complaint to have been committed within the jurisdiction of the Ingham county circuit court. Petitioner makes no objection to the sufficiency of the complaint or the proceedings that led up to his examination. An examination by the circuit judge, under the statutes above cited, is similar to that of a grand jury. It is popularly known as a "one-man grand jury" proceeding. Even though this term may be a misnomer, it nevertheless is descriptive and we refer to the examination as that of a "one-man grand jury." These statutes provide for the summoning of witnesses and their examination, and that any witness neglecting or refusing to answer questions shall be guilty of contempt punishable by a fine not to exceed $100 or imprisonment in the county jail not to exceed 60 days, or both, in the discretion of the court. They further provide that no witness shall be required to answer questions which might

tend to incriminate himself unless he is granted immunity, et cetera. According to the brief filed by petitioner he was a vice-president of the Michigan National Bank. He spent some months in Lansing lobbying against a bank bill, the purpose of which, if enacted, was to restrict chain banking generally in the State of Michigan. It is not claimed that petitioner was a professional lobbyist, or that he ever lobbied for any other measure. While thus engaged in lobbying as to this particular bill, he repeatedly contacted various members of the legislature in Lansing. In the course of his examination, to which later we shall refer with more particularity, petitioner testified that he could not remember or recall a conversation with a certain legislator who, in order to retain the secrecy of the proceedings except as it becomes necessary to divulge them, is described as "A" in the return of the judge. The gist of the conversation was to the effect that "A" made an offer to petitioner that he would change his vote for a consideration. The approximate time when, and the definite place where, the conversation took place and the real name of "A" were set forth in the questions to petitioner. He refused to affirm or deny that the conversation took place and repeatedly asserted words to the effect that he had no memory of such a conversation and finally in his memory "it didn't happen." After futile efforts to obtain a more satisfactory answer, and an answer of "Yes" or "No" to the particular question, the judge adjourned the one-man grand-jury proceedings and, in open court, adjudged petitioner guilty of contempt and sentenced him to serve 60 days in the county jail in accordance with 3 Comp. Laws, 1929, § 17219 (Stat. Ann. § 28.945). Petitioner thereupon filed a petition for habeas corpus and ancillary writ of

certiorari. The judge, as part of his return, filed a transcript of such portion of the testimony as he deemed sufficient to show the grounds for the contempt order. Obviously because of the secrecy of the proceedings, as provided by law, the transcript of the entire proceedings was not included in the return.

Petitioner assails the constitutionality of the "one-man grand-jury statutes," claiming that they impose nonjudicial duties on a judge, and that one cannot be held in contempt if he testifies before a nonjudicial body. Petitioner's counsel, as well as those who appear as *amici curiae,* base their claims largely on the case of *In the Matter of Richardson,* 247 N. Y. 401 (160 N. E. 655), the opinion of which was written by the late Justice Cardozo in his characteristically learned and lucid style. We are much impressed but not bound by the opinion. Some of the statements therein, if wrested from the context, might be applicable to the instant case, were the issues the same. The sole issue in the *Richardson Case* was whether a New York statute which provided that the governor of New York, in a proceeding before him for the removal of a public officer, might as governor take the evidence, or at his option direct that the taking of proofs be delegated to a judicial officer or commissioner for the purpose of taking testimony and reporting his findings to the governor. The law was held to be unconstitutional on the ground that it was a delegation of the administrative powers to the judiciary. It is axiomatic that under our Constitution and the American system of jurisprudence, the executive, legislative and judicial departments of the government must be kept separate and one department cannot delegate its duties to the other. In discussing the cases where duties in addition to

holding court were imposed upon the judge, he stated (p. 412):

"Superficial analogies are suggested, but superficial only. A magistrate before whom there is laid an information of the commission of a crime may take the depositions of the informant and prosecutor and of any witnesses produced (Code of Criminal Procedure, § 148). His inquiry is judicial. If he finds that a crime has been committed and that there is reasonable cause to believe that the defendant has committed it, he issues a warrant of arrest (Code of Criminal Procedure, § 150, subd. 2). He does not keep to himself the knowledge thus acquired, but embodies it in depositions which are exhibited to the defendant like any other public record."

He stated, so that the decision would not be misapprehended, its tenor was to deny the power of the legislature to charge a justice of the supreme court with the duties of a prosecutor in aid of the executive. We might add that under the laws of this State, hereinbefore referred to, the testimony is kept secret, but if the judge finds that a crime has been committed, he orders a warrant to be issued, and an examination held in open court before a magistrate and, if probable cause is shown, the accused is bound over for trial in the proper court. It will be noted that under the Constitution of the State of New York,* a grand jury investigation precedes a criminal complaint. This is likewise true in the Federal courts, in accordance with Article 5 of the Amendments to the Constitution of the United States. The Constitution of the State of New York contains no similar provision to that of the State of Michigan which makes the circuit judge a conservator of the peace.

---

* Art. 1, § 6.—Reporter.

In *Cobbledick* v. *United States,* 309 U. S. 323 (60 Sup. Ct. 540, 84 L. Ed. 783), the court stated:

"The Constitution itself makes the grand jury a part of the judicial process. It must initiate prosecution for the most important Federal crimes. It does so under general instructions from the court to which it is attached and to which, from time to time, it reports its findings. The proceeding before a grand jury constitutes 'a judicial inquiry,' *Hale* v. *Henkel,* 201 U. S. 43, 66 (26 Sup. Ct. 370, 50 L. Ed. 652), of the most ancient lineage. See *Wilson* v. *United States,* 221 U. S. 361 (31 Sup. Ct. 538, 55 L. Ed. 771, Ann. Cas. 1912D, 558). The duration of its life, frequently short, is limited by statute. It is no less important to safeguard against undue interruption the inquiry instituted by a grand jury than to protect from delay the progress of the trial after an indictment has been found. Opportunity for obstructing the 'orderly progress' of investigation should no more be encouraged in one case than in the other."

The statutes of this State, invoked in the instant case, serve the same purpose as the constitutional provisions in regard to grand juries in other jurisdictions. They do not impose nonjudicial duties upon the judiciary and are in strict conformity with the Constitution of this State (1908) which in Article 7, under the heading of "judicial department," makes due provision in regard to the judicial power. In article 7, § 18, under the heading "conservators of the peace," it is stated that justices of the Supreme Court, circuit judges and justices of the peace shall be conservators of the peace within their respective jurisdictions. Certain statements in the case of *Allor* v. *Wayne County Auditors,* 43 Mich. 76, were in a measure overruled and must be re-

stricted by the holding in the subsequent case of *Averill* v. *Perrott*, 74 Mich. 296, in which, speaking of conservators of the peace, we said:

"As such conservators, they had, when the Constitution took effect, the authority to apprehend offenders against the criminal laws of the State, and to hold examinations, and commit, bind over, or hold to bail, as well as other authority exercised by conservators of the peace."

Petitioner claims that the office of a conservator of the peace is a different position from that of a judicial officer. Under article 7, § 9, of our Constitution (1908), a circuit judge would be ineligible for any other office than a judicial office for the term for which he is elected and for one year thereafter. Under section 18 he is a conservator of the peace by virtue of the fact that he is a circuit judge. *Averill* v. *Perrott, supra.* The one-man grand jury proceedings, in accordance with law, were instituted in the circuit court for the county of Ingham. When a complaint had been filed by the attorney general, it became incumbent upon the judge as a circuit judge to make an investigation. He was neither a prosecuting attorney, policeman or detective. He had judicial duties to perform and he proceeded in a judicial capacity. In order to dispel any doubt as to the finding of petitioner guilty of contempt, he proceeded to act as a circuit judge in regard to proceedings which he himself had conducted while acting as a one-man grand jury.

Because of the importance of the question, we have re-examined it with extreme care although the questions raised have been heretofore decided by this court a number of times. In *Mundy* v. *McDonald,* 216 Mich. 444 (20 A. L. R. 398), the case of *Johnson* v. *Morton,* 94 Mich. 1, was referred to, and we held that the defendant, a circuit judge, acted

in a judicial capacity in conducting an examination in proceedings for the discovery of crime, similar to the circumstances in the instant case. In the case of *People* v. *Doe,* 226 Mich. 5, while the decision of the trial court was upheld by an equally divided court, the question upon which there was a disagreement was not as to the constitutionality of the act but whether defendant, an attorney, was obliged to disclose information which he claimed was confidential. Mr. Justice FELLOWS, in writing the opinion upholding the trial court, stated that he found no merit in appellant's objection to the constitutionality of the act on the ground that it conferred nonjudicial duties upon circuit judges. In *People* v. *Wolfson,* 264 Mich. 409, a like objection was raised by defendant who had been adjudged guilty of contempt by a circuit judge, sitting as a one-man grand jury, and we again upheld the act in a unanimous opinion of the court. Also, see *Johnson* v. *Morton, supra.* In *People* v. *St. John,* 284 Mich. 24, wherein defendant's conviction for perjury before a one-man grand jury was affirmed by an evenly divided court, the only point on which the court disagreed was the form of the complaint. See, also, *People* v. *O'Hara,* 278 Mich. 281; *In re Watson,* 293 Mich. 263. There are many other cases wherein we have affirmed convictions for contempt in one-man grand jury proceedings similar to the one in the instant case. See *People* v. *Bommarito,* 270 Mich. 455; *In re Wilkowski,* 270 Mich. 687; *In re Schnitzer,* 295 Mich. 736; *In re Ward,* 295 Mich. 742; *In re Cohen,* 295 Mich. 748. So that there may be no further question, we hold that the judge conducting a one-man grand-jury proceeding is acting in a judicial capacity.

Petitioner was not entitled to a full inspection of the records of his examination by the grand jury, under 3 Comp. Laws 1929, § 17218 (Stat. Ann.

§ 28.944) ; *People* v. *Prevost,* 219 Mich. 233; *People* v. *McCrea,* 303 Mich. 213, and cases therein cited on page 244.

Judge Carr in his return to the writ of certiorari certified that the petitioner was summoned to testify as a witness in the one-man grand-jury proceeding, the judge adjudged petitioner guilty of contempt of court and imposed a sentence upon him of 60 days in the county jail. The clerk inadvertently inserted in the sentence the words "at hard labor," but these words were stricken out immediately and an amended order was made, when the judge's attention was called to the error. Petitioner was denied bail. He was refused a copy of his lengthy testimony before the grand jury because it involved many subjects which could under no circumstances be divulged or disclosed without seriously interfering with and jeopardizing the work of the grand jury, and it involved a number of individuals about whom petitioner had been questioned. The circuit judge further stated that petitioner made untruthful answers to the questions put to him; that, without giving any good and sufficient reason for such failure, he avoided disclosing information within his knowledge sought to be elicited from him; that his attitude was contemptuous and his answers were evasive; that he refused to answer proper questions propounded to him; that his typewritten testimony covers 139 pages; that he was examined particularly regarding his activities in connection with the passage of a certain bill in the legislature and was interrogated with regard to his conversation and relations with certain senators and representatives, certain ones having appeared in the proceedings and given full confessions concerning conversations with petitioner in regard to bribery; that one of the legislators confessed to a conversation with petitioner concerning

a bribe requested from petitioner, and for reasons hereinbefore indicated this legislator is referred to in the transcript as "A". The return of the judge gives a transcript of portions of petitioner's testimony. He testified that he probably talked with "A" but did not recall the time or the place of the conversation or that he talked with him in the lobby of the Olds Hotel, when "A" stated: "Mr. Slattery, I have decided to change my mind about the (blank) bill, if I get some money." Petitioner testified: "I don't recall any such thing," and when he was asked if it did not happen, he stated: "I don't recall it happening." When further asked whether a thing of that sort could take place and he would not remember it, he stated: "I don't remember it."

We give a further excerpt from his testimony as follows:

"Q. Do you say that it didn't happen?

"A. Not to my knowledge.

"Q. Will you say now that it didn't happen?

"A. I don't recall it happening.

"Q. Do you mean to sit here and tell me, Mr. Slattery, that a thing of that sort could occur and you not recall it?

"A. I don't know. I can't recall the incident happening at all.

"Q. The facts are now Mr. 'A' voted 'Yes' on the 15th of May. He heard about the fact that money was floating around, just the same as some of the rest of them heard about money that your boy friends who were working with you on this bill had money to spend, and were spending it, and so he stepped up to you, because he had seen you over there in the House time and time again, and in the lobby of the Olds Hotel he said to you, 'I have decided to change my vote,' or words to that effect, 'for a consideration,' or 'for some money.'

"*A.* I don't recall him ever saying that to me, or ever hearing him say it.

"*Q.* I am asking you again now, and I want an answer, 'Yes' or 'No.'

"*A.* I don't know."

The judge further certified that to many of the questions put to Slattery concerning the incident referred to, as well as others, he repeatedly replied: "I said I don't remember." Another excerpt from his testimony is as follows:

"*Q.* Your Honor, I insist that I have an answer to that question.

"*The Court*: Mr. Slattery, if anything like that happened, you would know it, wouldn't you? —

"*A.* If I was listening, I would.

"*The Court*: If you were listening. Don't you think that you would listen, if any member of the legislature stepped up to you and talked to you?

"*A.* Oh, I could be interrupted, lots of times, your Honor, and I —

"*The Court*: Well, that is utter nonsense. You know whether this incident happened or did not.

"*A.* Well, I can't recall any such thing happening.

"*The Court*: Do you want to tell us now, then, that nothing of the kind happened?

"*A.* I can't remember any such thing happening. You want me to tell the truth, don't you?

"*The Court*: You are not willing to say that it didn't happen, are you?

"*A.* I don't say that it did or didn't happen. I don't say that it didn't happen; I don't say that it did.

"*The Court*: You want to leave your testimony just like that, that you are unwilling to say now here under oath, on the stand, that that did not happen?

"*A.* I am willing to say that I don't remember any such thing happening, your Honor.

"*The Court*: Well, that is sheer nonsense. Do

you expect us to believe for a moment that you can't remember a thing of that kind —

"*A.* I don't know. * * *

"*The Court*: So I say we come back to the proposition you will not say here and now under oath that this did not happen?

"*A.* I will say that —

"*The Court*: I want an answer to that question, 'Yes' or 'No.'

"*A.* — in my memory, it never happened, your Honor."

Then after some testimony that was omitted, the following colloquy took place: ..

"*The Court*: You can answer the question, 'Yes' or 'No.' I am entitled to an answer to it in that form. Do you say now that that didn't happen?

"*A.* Do I have to answer any question that might incriminate me?

"*The Court*: Do you wish to decline to answer the question on the ground that the answer might incriminate you?

"*A.* I don't know. I don't even know my rights, your Honor. I am trying to be honest, and to tell you that I don't remember any such incident happening.

"*The Court*: Well, we are entitled to know now what your claim is with reference to this occurrence. * * *

"*The Court*: I want to know right here and now, Mr. Slattery, and this is the last time I am going to ask you that question: Is it your claim now, — do you say now, here under oath, that that did not happen?

"*A.* Your Honor, I don't — I won't swear to anything that I don't know to be a fact, and you don't want me to, do you?

"*The Court*: But I want you to answer these questions here, that you should be prepared to an-

swer, and are prepared to answer. You know whether that happened or not.

"*A.* I don't remember any such thing happening, your Honor, and you want me to tell the truth, and that is my memory of it, so help me God, I wouldn't lie to you for anything.

"*The Court*: Then you mean to say that it didn't happen, do you?

"*A.* Not in my memory, it didn't happen."

Later, when pressed for an answer:

"*Mr. Sigler*: I ask the court right now to commit him for contempt of court in the presence of the court.

"*A.* I have answered every question I could as honestly as I can.

"*Q.* You haven't answered this, and Judge Carr has been very particular to give you a chance to answer. I am going to give you one more chance.

(Again testimony is omitted.)

"Do you say that it did or did not happen?

"*A.* I won't say that it did happen; I won't say that it didn't happen, because I can't remember.  *  *  *

"*Q.* Upon receipt of this subpoena today, with whom did you talk?

"*A.* I talked with my attorney."

The judge further certified that the answers thus given, as well as the answers to other questions, indicated beyond question the intention upon his part to refrain from testifying to facts obviously within his knowledge. The judge stated that Slattery was interested in a certain bill pending before the legislature and devoted the major portion of his time over a period of several months to lobbying in regard to the bill and that, as a lobbyist on behalf of certain parties interested in the bill, he was in close touch with members of the legislature. The contempt consists in the giving of false or evasive answers and evading replies to questions pro-

pounded by the subterfuge of the answers, ''I don't remember,'' or ''recall,'' or ''it did not happen in my memory.'' Such answers might be truthful in regard to trivial events and particularly so if they happened some time in the past, but it does not seem reasonable that a man of petitioner's position, who devoted several months of his time to lobbying in regard to a certain bill and thus trying to win over legislators to his point of view, could not possibly remember whether or not ''A'' had approached him and stated he would change his vote for a consideration. An additional return by the judge discloses that the question propounded by him immediately before the subject of self-incrimination arose was similar to the previous one to which petitioner had replied that he did not remember or that it did not happen within his memory. When the judge insisted that petitioner give an answer of ''Yes'' or ''No'' to the question of whether Mr. ''A'' had made an offer to petitioner to change his vote for a consideration, or words to that effect, notwithstanding petitioner's previous statement that he could not remember, he raised the question of self-incrimination. This indicates that he did remember but he feared that the answer might incriminate him. The judge asked him whether he declined to answer on that ground, and petitioner replied that he did not know what his rights were. We realize he was without counsel, although he had consulted counsel both in Detroit and in Lansing before taking the witness stand. Preliminary questions put to him as to what someone else said ordinarily would not involve self-incrimination. The witness himself is not the sole arbiter of the incriminating nature of the testimony he is asked to give. Where it is perfectly clear that an answer cannot incriminate, silence is contumacious. *In re Schnitzer*, 295 Mich.

736. Also, see *United States* v. *Sullivan*, 274 U. S. 259 (47 Sup. Ct. 607, 71 L. Ed. 1037, 51 A. L. R. 1020). Remote danger of incrimination, as a rule, is not sufficient to excuse a witness from testifying. We need not pass upon the question of whether an answer, "Yes, it did happen," or "No, it did not happen," would have been incriminating, as the judge did not have an opportunity to rule on it. The question of self-incrimination is not involved. We only mention that the inquiry made by witness as to self-incrimination does indicate that his previous answers as to lack of memory were untrue, and in that respect he was wilfully evasive in his previous answers.

Petitioner stresses the case of *Ex parte Hudgings*, 249 U. S. 378 (39 Sup. Ct. 337, 63 L. Ed. 656, 11 A. L. R. 333), wherein the petitioner was adjudged guilty of contempt for falsely swearing, stating that he could not recollect ever seeing a certain party write or sign his name, although he believed from having seen his writing that the writing shown him was of the same party. The witness persisted in saying that he could not recall seeing a certain party write, that he would not say that he had or had not. In the above case, the lower court had found that from other testimony in the case the witness was wilfully refusing to testify truthfully, that he was committing perjury. There was no reference in the case to show any circumstances or conditions showing that such perjury had an obstructive effect. The court, however, stated:

"Whether, then, power to punish for contempt exists in every case where a court is of the opinion that a witness is committing perjury, is the test we must here apply. Because perjury is a crime defined by law, and one committing it may be tried and punished, does not necessarily establish that when com-

mitted in the presence of a court it may not, when exceptional conditions so justify, be the subject matter of a punishment for contempt."

The court cited with approval *In re Rosenberg,* 90 Wis. 581 (63 N. W. 1065, 64 N. W. 299) and a number of other cases including *United States* v. *Appel,* 211 Fed. 495, in which Judge Learned Hand stated:

"The rule, I think, ought to be this: If the witness' conduct shows beyond any doubt whatever that he is refusing to tell what he knows, he is in contempt of court. That conduct is, of course, beyond question when he flatly refuses to answer, but it may appear in other ways. A court, like any one else who is in earnest, ought not to be put off by transparent sham, and the mere fact that the witness gives some answer cannot be an absolute test. For instance, it could not be enough for a witness to say that he did not remember where he had slept that night before, if he was sane and sober, or that he could not tell whether he had been married more than a week. If a court is to have any power at all to compel an answer, it must surely have power to compel an answer which is not given to fob off inquiry."

We quote from *O'Connell* v. *United States* (C. C. A.), 40 Fed. (2d) 201:

"His contumacy was further established by the character of his response to questions to which he did make formal answer. Since *Ex parte Hudgings,* 249 U. S. 378 (39 Sup. Ct. 337, 63 L. Ed. 656, 11 A. L. R. 333), we have held that, though a witness make formal answer, it may be apparent that he is withholding the truth, and that such obstruction of justice may be punished as contempt even if it be also perjury. *Loubriel* v. *United States* (C.C.A.), 9 Fed. (2d) 807. See, also, *In re Schulman,* 101 C.C.A. 361

(177 Fed. 191); *In re Kaplan Bros.*, 130 C.C.A. 267 (213 Fed. 753); *Haimsohn* v. *United States* (C.C.A.), 2 Fed. (2d) 441; *United States* v. *Karns*, 27 Fed. (2d) 453. * * * His parrying with the examiner and his constant reiteration of 'I don't remember' in respect to matters of which he must have had some recollection indicate to our minds, as they did to the grand jury and the district court, a determination not to give his best recollection of facts about which he was being interrogated. Such conduct, coupled with his refusal to answer some questions at all, under a claim of privilege which the court had previously instructed him to be inapplicable, furnishes a typical example of recalcitrancy. His attitude was clearly obstructive and contemptuous of judicial authority."

The refusal to answer or the giving of an evasive reply obstructs the work of a judge or jury which, in an orderly manner, is seeking to ascertain whether a complaint is true and certain crimes have been committed. If the witness could hide behind the answer "I don't remember," or words to that effect, when such statement was manifestly untrue, it would emasculate the one-man grand-jury proceedings and make them of little or no value.

In *Finkel* v. *McCook*, 247 App. Div. 57 (286 N. Y. Supp. 755), Finkel was adjudged guilty of contempt of court because as a witness before the grand jury he gave testimony which was plainly inconsistent, manifestly contradictory and conspicuously unbelievable so as to make it apparent that he had deliberately concealed the truth and given answers which were replies in form only and substantially as useless as a complete refusal to answer. The court held that on his own admission he was chargeable with perjury and subject to punishment for that crime,

but there was nothing to prevent the court from treating it as a contempt. The court said:

"The distinction is very clearly illustrated in *Edwards* v. *Edwards*, 87 N. J. Eq. 546, 548 (100 Atl. 608), where it was said: 'It is a contempt and may be punished as such. It may also be punished as a crime. The one act constitutes two offenses, one against the court, the other against the State, just as an assault committed in court may be both a contempt and a crime.'"

The return of the judge shows that there was evidence indicating that Slattery was obstructing the work of the court by wilfully giving evasive answers. The judge had the advantage of seeing the witness and the manner in which he testified.

The case is presented to us also on certiorari. The court in its return stated that the attitude of the witness upon the stand was contemptuous, that his answers to questions propounded were evasive and that he refused to give proper answers to the questions put to him. The law is stated by Mr. Justice FELLOWS, speaking for the court in *People* v. *Doe,* 226 Mich. 5:

"The return must be taken as true. In this certiorari proceeding we are not the triers of the facts. We do not weigh the testimony. We may and it is our duty to examine the testimony to see if there is any evidence to support the finding. If there is we can not measure it. The finding must be accepted as true. This is settled law."

He also quoted from *In re Rosenberg, supra,* as follows:

"Whether the petitioner's answers were untruthful, evasive, or prevaricating, so as in effect to amount to a refusal to answer and to give the discovery called

for; or whether it was fairly within his ability to make the discovery required of him; whether his conduct was innocent or contumacious, — were questions which the exigency of the case required the circuit court to determine. The power to determine is jurisdiction. The correctness or justice of the determination of these questions by the circuit court is not open for consideration here. That determination is conclusive in this proceeding."

We have examined the record as submitted to us and we find there is evidence to support the judge's finding.

Other questions raised have been considered. We do not believe they are of merit or that it is necessary to discuss them in detail. It was proper for Judge Carr to make the order finding petitioner guilty of contempt, not as a one-man grand jury but as a circuit judge. It would have been an idle gesture for him to have the record of a case in which he had sat, first written up and then submitted to himself. The sentence of 60 days was in accordance with the statute.

In a brief of an *amicus curiae,* distinction is sought to be made between a court and a judge. When a judge sits in court, the words "court" and "judge" are used interchangeably. It was pointed out that there are two judges in Ingham county. Judge Carr took jurisdiction. Two men are not a one-man grand jury. It is claimed that imposing this extra work upon a judge prevents him from performing his other judicial duties. We know of no more important duty than to sit as a one-man grand jury called to uncover criminal malfeasance in office. Under the judicial system of this State, judges from other judicial districts can be assigned to sit in judicial circuits that need assistance. It is further claimed that a proceeding of this nature may cause a very

large financial burden upon the taxpayers of the county. We shall consider such question, when and if it arises. In the instant case, the State has made provision for the expense of the one-man grand jury. It is further claimed that the special prosecutor, assistant prosecuting attorney of Ingham county and special counsel have no standing in court. A similar question arose in regard to an investigation of a one-man ᐟgrand jury in *Re Petition for Investigation of Recount,* 270 Mich. 328, and it was held that the judge in making this investigation might call assistance from the bar or otherwise as he might desire.

Petitions for habeas corpus and certiorari are dismissed and petitioner is remanded to the custody of the sheriff to complete his sentence for contempt unless he purges himself of such contempt to the satisfaction of the circuit judge, as provided by law.

S<small>TARR</small>, C. J., and N<small>ORTH</small>, B<small>USHNELL</small>, S<small>HARPE</small>, and B<small>OYLES</small>, JJ., concurred with B<small>UTZEL</small>, J.

W<small>IEST</small>, J. (*concurring*). I concur in the result on the ground that petitioner was contumacious.

R<small>EID</small>, J., concurred with W<small>IEST</small>, J.