PEOPLE *v.* KAROLL.

1. CRIMINAL LAW—BRIBERY—PUBLIC EMPLOYEE—FELONY.
   Where party claimed to have been bribed was an employee duly
   appointed to assist county purchasing agent, he was a public
   servant or employee, hence, charge was properly brought under
   section of penal code making it a felony to bribe a public
   officer, servant, or employee, rather than section making it a
   misdemeanor to bribe the agents, employees, or servants of
   another person (Act No. 328, §§ 117, 125, Pub. Acts 1931).

2. SAME—BRIBERY—PURCHASE OF TROUSERS—SAMPLES AS EXHIBITS.
   In prosecution for bribery of a public employee wherein trans-
   action concerned purchase of trousers for county infirmary, it
   was prejudicial error to permit the introduction, as an exhibit
   for purpose of comparison, of a sample pair of trousers pur-
   chased from a different concern than defendant represented
   and which were admittedly made of cheaper cloth and were of
   a different type than sold by defendant (Act No. 328, § 117,
   Pub. Acts 1931).

3. EVIDENCE—TEXTILES—COMPARISON—LACK OF SIMILARITY—CONDI-
   TIONAL ACCEPTANCE—FAILURE TO FURNISH CONNECTING PROOF.
   While it was permissible to introduce over a defendant's objec-
   tion an exhibit of textile material for purpose of comparison,
   conditioned upon further proof, it became the duty of the
   court to strike out the evidence upon motion when such further
   proof was not only not given but a lack of similarity shown..

4. BRIBERY—VIOLATION OF STATUTES—COUNTIES.
   In prosecution of salesman for bribery of assistant purchasing
   agent for county in connection with purchase of trousers for
   a county infirmary, it was improper to introduce section of
   statute applicable to cost of repairs to buildings, furniture,
   and fixtures but not to merchandise for county institutions, so
   as to give jury impression that defendant had violated such
   statute (1 Comp. Laws 1929, § 1233, subd. 7; Act No. 328,
   § 117, Pub. Acts 1931).

5. SAME—VIOLATION OF RULES OR ORDERS OF COUNTY AUDITORS—
   NOTICE.

In prosecution of salesman for bribery of assistant purchasing
agent for county in connection with purchase of trousers for
a county infirmary, it was improper to introduce testimony as
to a rule or order adopted by the board of county auditors to
the effect that on·orders for the purchase of $1,000 or more
of supplies, bids should be obtained by advertisement where
such rule was not shown to have been brought to defendant's
attention or incorporated into the law in such a manner as
to give the public notice thereof (Act No. 328, § 117, Pub.
Acts 1931).

6. CRIMINAL LAW—GRAND-JURY TESTIMONY—REFRESHING RECOLLEC-
   TION—EXPLANATION OF CONTRADICTIONS—CORROBORATION.

While it was not reversible error for trial court in prosecution
for crime to permit the prosecutor to ask defendant upon
cross-examination whether he had been asked certain questions
and had given certain answers before the grand jury for the
purpose of refreshing recollection and to secure an explanation
of some contradictions, it does not permit extensive reading of
questions and answers which only corroborate the testimony
given by defendant at the trial and tend to prejudice him at
the trial by emphasizing the fact that he had been before
the grand jury.

7. SAME—EVIDENCE—RECORD OF GRAND-JURY PROCEEDINGS—AU-
   THENTICATION—IMPEACHMENT.

Without proper authentication of the record of grand-jury pro-
ceedings, such record cannot be used for impeachment purposes
in a prosecution for crime.

8. SAME—RECORD OF GRAND-JURY PROCEEDINGS—IMPEACHMENT—
   CROSS-EXAMINATION—USE OF RECORD BY DEFENDANT.

In prosecution for crime wherein defendant is a witness in his
own behalf and the prosecution uses isolated parts of the
record of his testimony before a grand-jury upon cross-
examination of him for the purpose of impeachment, he
should be permitted to see and use his testimony taken before
the grand jury in order to bring out explanatory matters rele-
vant to such isolated answers if the same can be done without
jeopardizing the work of the grand jury.

9. SAME—SUMMATION FOR JURY—PREJUDICIAL REMARKS BY PROSE-
   CUTOR.

Where assistant prosecuting attorney made improper and prej-
udicial remarks in his summation of the people's case for the
jury and new trial is granted because of other errors, such
remarks should not be repeated on retrial.

Appeal from Recorder's Court of the City of Detroit; Maher (John J.), J. Submitted June 13, 1946. (Docket No. 49, Calendar No. 42,820.) Decided September 11, 1946.

Samuel Karoll was convicted of giving a bribe in violation of Act No. 328, § 117, Pub. Acts 1931. Reversed and new trial granted.

*P. J. M. Hally* (*Glenn. C. Gillespie*, of counsel), for appellant.

*John R. Dethmers*, Attorney General, *Edmund E. Shepherd*, Solicitor General, *Gerald K. O'Brien*, Prosecuting Attorney, and *Andrew DeMaggio*, Assistant Prosecuting Attorney, for the people.

BUTZEL, C. J. Samuel Karoll, defendant, was convicted of giving a bribe to one James M. Ritchie. The penal code (Act No. 328, § 117, Pub. Acts 1931 [Comp. Laws Supp. 1940, § 17115–117, Stat. Ann. § 28.312]), referred to in the information, reads as follows:

"Any person who shall corruptly give, offer or promise to any public officer, agent, servant or employee, after the election or appointment of such public officer, agent, servant or employee \* \* \* any gift, gratuity, money, \* \* \* the intent or purpose of which is to influence the \* \* \* decision or judgment, \* \* \* shall be guilty of a felony."

The information charged that the party bribed was one James M. Ritchie, a certain public agent, servant and employee, who had theretofore been appointed and had duly qualified and was then and there employed by the county of Wayne, as an assistant purchasing agent, and that defendant paid him $500 as a bribe in order to secure certain orders.

The testimony showed that Ritchie was a public servant or employee duly appointed to assist the purchasing agent who bought supplies for the county of Wayne. Ritchie testified that he received bribes from many other vendors and that he usually turned this money over to the "county slush fund." Defendant, on appeal, claims that at most he should have been charged under section 125 of the penal code (Comp. Laws Supp. 1940, § 17115–125, Stat. Ann. § 28.320), which makes it a misdemeanor to bribe agents, employees, or servants of another person. It does not refer to public servants or employees as provided for by section 117, *supra*. We find nothing incompatible between the two sections. The cases of *People* v. *Freedland,* 308 Mich. 449, and *People* v. *Leve,* 309 Mich. 557, in no way apply to the present situation. They refer to section 118 of the penal code in regard to the acceptance by a public officer of a bribe. The charge was properly brought under section 117, *supra.*

Defendant was interested in a clothing concern and sought the business of the Wayne county auditors who employed Ritchie in the purchasing department. Ritchie did not have the right to pass on samples. He secured the information which he gave to the county purchasing agent. It was necessary to secure the signature of the latter before the county auditors would issue an order for supplies for the county institutions of Wayne county. Karoll but recently had become connected with what was known as the Sta-Poket Trouser Company which in the past had sold a large number of cotton French back pants to the Eloise Infirmary. Defendant had met Ritchie a number of times. Ritchie, who became a witness for the State, testified that at one time defendant had given him $100 which he had put into what was known as a "slush" fund; that on another

occasion defendant took Ritchie for a ride around Belle Isle, and that defendant had handed to Ritchie an envelope and told him to open it when he got home; that he found it contained $500 which he exchanged for larger bills and then placed the money in his lock box in the vault in the auditors' office.

Defendant claims that when Ritchie told him about the county's need for cotton French back trousers, he told Ritchie that they did not have any, but they had some trousers of better material containing about 12 per cent. wool. Defendant then submitted a sample, which the State was unable to produce, although the State claims it was made of cotton French back cloth, while defendant claims that it was a more expensive French back cloth containing 12 per cent. wool content. Defendant thereupon received one order for Eloise Infirmary December 1, 1941, for 20 dozen and another one a few days later for 25 dozen.

Some of the errors alleged on appeal have real merit. Serious error arose on the introduction of exhibit 9 for the purposes of a comparison with exhibit 10 by the people. Exhibit 9 was a pair of trousers taken from a batch of 493 dozen bought in June, 1942, of the National Dry Goods Company at a total cost of $7,185.77 to the county. They were made of covert cloth. Exhibit 10 was a pair of trousers from a batch bought from the predecessor Sta-Poket Trouser Company early in 1941 of the type allegedly offered by defendant's company, the successor Sta-Poket Trouser Company, for sale to the county in December, 1941. Had an order for 493 dozen been given at the price quoted for the 20 or 25 dozen, the trousers would have cost $12,240. Defendant stresses the claim that the sample submitted in December, 1941, was for a more expensive type of trousers containing 12 per cent. wool content. As

previously stated, the people were unable to produce the sample submitted in December, 1941. Counsel for appellant strenuously and continuously objected to exhibit 9 bought from a company strange to these proceedings and of a type of trousers different from the type the people were forced by the testimony to concede was offered by defendant company. It can be readily seen that the comparison in price between the covert cloth and even the cotton French back trousers were necessarily prejudicial to defendant, if the covert cloth trousers are far cheaper than cotton French back trousers.

Appellant claims that the exhibits were not even similar and permitting the jury to speculate on requisitions which were issued so many months apart covering a different quality of goods was highly prejudicial. The lower court ruled that the exhibits were admissible subject to the showing that the merchandise was similar. The people called an assistant purchasing agent for the county who testified that there was not a great deal of difference in the quality of the cloth for the two kinds of trousers. Cross examination developed the fact that the witness had no experience in the field of textiles, and later, when he was recalled by the defense, he testified that he had made further investigation and found that cotton French back trousers are more expensive than cotton covert, and that the French back containing 12 per cent. wool would be more expensive. He further testified as to relative prices and cited one quotation where cotton French back trousers would cost $6.55 per dozen more than cotton covert trousers. Other testimony was introduced along this line. Counsel renewed his motion to strike from the record testimony referring to exhibit 9. The only witness who had testified as to the similarity of these textiles had retracted his statement. The defense was compelled to introduce textile experts

showing the great difference in quality and price of cotton covert and cotton French back trousers. Notwithstanding objection of defendant's counsel, the jury was allowed to speculate as to whether trousers worth only $7,185 were offered to the county at an advance of over $5,000 in price. While the court could provisionally permit the introduction of such testimony conditioned upon further proof, it became the duty of the court to strike out the evidence upon motion, when such further proof was not given, but on the contrary a lack of similarity was shown. See *Dillin* v. *People,* 8 Mich. 357, 368, cited in *Waldron* v. *Waldron,* 156 U. S. 361 (15 Sup. Ct. 383, 39 L. Ed. 453). Also, see *People* v. *Abell,* 113 Mich. 80. The admission of the evidence and the making of the comparison were prejudicial error.

The State was permitted to introduce section 1233, 1 Comp. Laws 1929 (Stat. Ann. § 5.608), paragraph 7 of which is as follows:

"Seventh, To make all contracts and leases for county offices, court rooms and other buildings for the use of the county and provide the necessary heating and lighting of the same, procure the necessary furniture and fixtures for them and make all necessary repairs thereto: Provided, that when the estimated cost of any work or materials to be provided by said board under this act shall exceed the sum of $1,000, the same shall be done or furnished by contract on bids received therefor, after publication of notice for at least five days in one or more daily papers published in the city of Detroit: And provided further, That this act shall not be construed to give said board the power to contract for the erection of any new buildings or the purchase of any land for any purpose whatever."

This section of the statute only applies to the cost of repairs to buildings and furniture and fixtures. It does not remotely apply to merchandise for county

institutions. The reading of the statute unquestionably gave the jury an idea that defendant had violated the statute. To make matters still worse, however, the State was permitted to give testimony as to a rule or order that had been adopted by the county auditors to the effect that on orders for the purchase of $1,000 or more of supplies, bids should be obtained by advertisement. It was neither claimed nor shown that such rule or order had ever been brought to defendant's attention or that it had been incorporated into the law in such a manner so that the public would have notice. See *Carland* v. *Western Union Telegraph Co.,* 118 Mich. 369 (43 L. R. A. 280, 74 Am. St. Rep. 394) ; *People* v. *Willson,* 205 Mich. 28.

Defendant had been questioned by the grand jury in regard to the bribery alleged. Upon cross-examination the prosecutor asked defendant whether he had been asked certain questions and had given certain answers before the grand jury. We have upheld the right to ask such questions for the purpose of recollection and to secure an explanation of some contradictions. *People* v. *McCrea,* 303 Mich. 213, and cases cited at page 244. This, however, does not excuse reading questions and answers that cover eight pages in the record and which only corroborate the testimony given by the defendant at the trial. See *United States* v. *Socony-Vacuum Oil Company, Inc.,* 310 U. S. 150 (60 Sup. Ct. 811, 84 L. Ed. 1129). Without proper authentication of the record of the grand jury proceedings, such record cannot be used for impeachment purposes. The record before us, in one instance, revealed one seeming contradiction which was clarified, and it did refresh defendant's memory, on a second point, so that as to these two questions it was proper to refresh the witness' recollection. However, there was no occasion to repeat voluminous testimony given before the

grand jury to corroborate what the witness had testi-
fied to at the trial. It unduly emphasized the fact
that defendant had been before the grand jury, and
thus might have prejudiced the jury at the main
trial. The court denied the request of counsel to see
all of defendant's own testimony given before the
grand jury at the time and place referring to the
same subject matter, isolated parts of which testi-
mony were read and used on cross-examination of
defendant. Defendant's counsel was only permitted
to see the questions and answers that had been read
into the record by the prosecuting attorney. In
*People* v. *McCrea, supra,* defendant was only permit-
ted to examine and use that part of the grand jury
testimony which the prosecution had used in exam-
ining the witnesses. He was, however, permitted
to see all of the transcript of his own grand jury
testimony. *People* v. *Stambaugh,* 303 Mich. 300,
reluctantly reaffirms the restriction as to the use of
the testimony of other witnesses than the defend-
ant involved. The people, however, call atten-
tion to *In re Slattery,* 310 Mich. 458, in which
the defendant was denied the right to examine his
own testimony given before the grand jury. He,
however, was given and there was introduced in this
court the entire testimony on which the charge of
contempt was based. We did refuse after his ad-
judication for contempt and when the case was no
longer before the trial court, to permit him to see
a copy of his lengthy testimony before the grand
jury because, as we stated, it involved many sub-
jects which could under no circumstances be divulged
or discussed without seriously interfering and jeop-
ardizing the work of the grand jury and involved
a number of individuals about whom Slattery had
been questioned. In the present case, there was no
reason given for refusing defense the right to see

all of defendant's testimony given. There can be readily seen the absolute injustice and unfairness of picking out isolated sentences of testimony of a witness before the grand jury, when he is made a defendant in a subsequent case, and denying him the right to see the testimony so that his counsel may bring out any explanatory matters relevant to these isolated answers, if this can be done without jeopardizing the work of the grand jury. A denial without a good reason is improper and should not be repeated on a new trial.

It is further claimed by defendant that there should be a reversal because of improper and prejudicial remarks made by the assistant prosecutor in his summation before the jury. Such remarks were improper and should not be repeated on a retrial of the case.

Reversed and new trial ordered.

CARR, BUSHNELL, SHARPE, BOYLES, REID, and NORTH, JJ., concurred. STARR, J., took no part in the decision of this case.