RUSSELL O. WARREN v.
STEGALL TRUCKING COMPANY, a CORPORATION, AND FRANK MILES.

(Filed 22 May 1963.)

**Evidence § 58—**

Where plaintiff, in cross-examination of defendant's witness, uses a written statement and has the witness identify his signature to the statement and read parts of the statement inconsistent with the testimony of the witness at the trial, it is prejudicial error for the court to refuse the request of defendant's counsel to see the statement and to use it if he deems it desirable to do so, notwithstanding the statement was not introduced in evidence. Defendant's objection *held* directed to the refusal of the court to permit him to see the statement and not to the failure of plaintiff's counsel to put the statement in evidence.

APPEAL by defendants from *Crissman, J.,* 21 January 1963 Civil Session of GUILFORD.

Civil action to recover damages for personal injuries, allegedly caused by the actionable negligence of Frank Miles, an employee of Stegall Trucking Company, a corporation, in operating a tractor-trailer unit owned by his employer in furtherance of his employer's business.

Defendants have filed a joint answer in which they deny Stegall Trucking Company is a corporation, but admit that at the time of the collision Frank Miles was an employee of T. G. Stegall trading and doing business as T. G. Stegall Trucking Company, and was driving the tractor-trailer unit of his employer at that time in furtherance of his employer's business, but they deny they were negligent, and in addition plead conditionally plaintiff's contributory negligence as a

bar to any recovery by him. Further, in their answer, Frank Miles pleads a counterclaim against plaintiff to recover for loss of wages and personal injuries allegedly caused by plaintiff's actionable negligence, and T. G. Stegall files a similar counterclaim to recover for damage to his tractor-trailer unit.

Plaintiff filed a reply in which in respect to Miles' counterclaim he denies he was negligent and avers Miles' loss of wages and personal injuries were solely and proximately caused by his own negligence, and in which in respect to Stegall's counterclaim he conditionally pleads contributory negligence of defendants as a bar to recovery.

The jury found by its verdict that plaintiff was injured by the negligence of the defendants as alleged in the complaint, that plaintiff was free from contributory negligence as alleged in the answer, and awarded him damages in the sum of $7,000.00 The jury did not answer the issues raised by the counterclaims of defendants.

From judgment on the verdict in favor of plaintiff, defendants appeal.

*Jordan, Wright, Henson & Nichols by Charles E. Nichols and G. Marlin Evans for defendant appellants.*

*Cahoon, Egerton & Alspaugh by Robert S. Cahoon and James L. Swisher for plaintiff appellee.*

PARKER, J.   Plaintiff's evidence tends to show the following facts:

About 8:00 p.m. on 12 January 1961 he was driving a tractor-trailer unit of his employer, Atlantic States Motor Lines, loaded with 16,000 pounds of freight, at a speed of 45 to 50 miles an hour, north on U. S. Highway #29 between the city of Greensboro and the city of Reidsville. The road was dry; the weather was clear; no fog. At that time U. S. Highway #29 was a two-lane highway. When he passed over the bridge crossing Reedy Fork Creek and started uphill, he overtook and passed a tractor-trailer unit operated by defendant Miles and owned by defendant Stegall. While he was traveling toward Reidsville, the Stegall unit attempted to pass him three or four times, and would fall back in line. "He'd whip out and he'd whip back; he did that on three or four different occasions. Then when we came into the Haw River bridge, which is, oh, maybe a half-mile, three-quarters of a mile, from where Troublesome Creek is, he whipped out again and attempted to pass on the bridge and fell back, and then he followed right up under me." When he rounded a curve approaching Troublesome Creek, the Stegall unit cut out into the left lane and attempted to pass him "on the straightaway" again. From the end of the curve going north to the bridge over Troublesome Creek, the highway is straight for about

1,000 feet. When the front of the Stegall unit reached the tandem wheels of his tractor, there was seen the headlights of an approaching motor vehicle. The Stegall unit "dropped back" and "whipped" quickly to the right hitting the left side of his trailer with the front of the Stegall tractor, and causing him to lose control of his tractor-trailer unit and slide into the bridge abutment. His unit then hit the left side of the bridge, crossed the bridge, and jackknifed on the right side of the highway. Three wheels of his tractor were torn off, the cab was torn loose, and when his unit came to rest, he was lying under the left front wheel and the axle on the tractor. He was injured, and his co-driver was thrown out on the highway and injured.

Defendants offered as a witness Frank Miles, who testified in substance on direct examination:

He was driving a small tractor-trailer unit, owned by T. G. Stegall and loaded with thirty-four or thirty-five thousand pounds of ice-packed chickens, at a speed of 45 to 50 miles an hour, north on U. S. Highway #29. Several tractor-trailer units of the Johnson Motor Lines passed him going north. Just before he reached the bridge over Troublesome Creek, an Atlantic States Motor Lines tractor with a Johnson Motor Lines trailer hooked on to it passed him at a pretty good rate of speed. He lost sight of its lights on a curve before the highway reaches Troublesome Creek bridge. When he rounded the curve and his lights shone toward the bridge over Troublesome Creek, he saw something that looked like fog and smoke. He slowed up to see what it was, and saw a pair of wheels in the left-hand lane of the bridge. When he approached closer, he saw a lot of rubbish on the bridge, and just beyond the bridge an Atlantic States Motor Lines trailer sitting flat down on the ground with no wheels on it. He held his brakes as tight as he could, and eased into the back of the trailer. After he stopped, he saw lots of steam where the radiator had burst, with oil and stuff all over the hot engine. He saw a man lying in the road hollering, "Oh, Lordy, somebody help me." He saw plaintiff there and he talked like he was in a daze.

In cross-examination by plaintiff's counsel, Frank Miles was asked to look at a written statement marked for identification as Plaintiff's Exhibit #14, and was then asked as to whether or not that is a true copy, photostatic copy, of a statement that he had made and signed telling about what happened on the night of the accident. He testified: "* * *and as to reading it all the way through and making sure it's my statement, well, I tell you—I don't have no education, your Honor, to read all this that he's got down there. No, I'm not; I've not got a high-school education. I can read a very little and I can't

read all of it, no, sir. I'd rather you would describe it because I can't make it plain and I'd rather it be plain for them. Yes, sir, that's my signature (indicating on paper writing). No, sir, I did not give a statement on January 13th, the next day. The night it happened is the only time I signed anything."

Later on, in cross-examination by plaintiff's counsel, this appears in the record:

"* * *No, sir, I did not put in my statement that I couldn't see more than 10 to 15 feet in front of me. As to reading the statement (handed the witness by the attorney) and it saying, 'And I could not see more than 10 to 15 feet in front of me; no, sir, I don't remember putting that down. That's right, that is my signature right down below it (indicating the exhibit).

"As to your question — 'How come you to keep on going 45 to 50 miles an hour when you couldn't see what was up in the road in front of you?' — the night that that happened, when that was made out (indicating paper writing), I don't know who wrote it. Some gentleman come up and he just wanted me to sign it and I was shook up, too, myself, and I may have said that but I could see farther than 10 or 15 feet. I could see as good vision as my light shone. As to how far my lights go, I couldn't say just how far. I imagine they would shine a thousand feet. As to just as soon as I got around the curve then and straightened out going down the road whether I could see for a thousand feet ahead of me, I don't think so. There wasn't that much distance between me and the outfit. I could not see whatever distance it was to the end of the bridge to the far end of the bridge, not clear on account of that steam."

Further, in cross-examination, Miles in response to questions by plaintiff's counsel testified as to what his statement said in respect to the front of his tractor running into the back of the trailer and moving it just a little ahead, and his front was still against the trailer, and as to what his statement said as to there being no other traffic in the area following him or meeting him and the lights on the Johnson rig were not working; and as to his leaving Charlotte at 4:30 p.m. and the wreck happening at 8:30 p.m. Then he was asked to account for the fact that it took him four hours to make the trip going at the speed he said he was traveling.

After the cross-examination of Miles ended and after three lines in the record of redirect examination by plaintiff's counsel, the record shows the following:

"MR. NICHOLS: I would like to see that statement.

"MR. CAHOON: I haven't offered it in evidence.

"MR. NICHOLS: You questioned him about it and I have a right to see what it is when you questioned him about it.

"THE COURT: Well, he hasn't offered it.

"MR. NICHOLS: I would like to get this part in the record, if your Honor please: Attorney for defendants requested the statement of counsel who examined Mr. Miles on the basis . . .

"THE COURT (interrupting): Now, just hold it just right there just a moment. What is it you are trying to do?

"MR. NICHOLS: I just wanted to get it in the record that I requested the statement and . . .

"THE COURT (interrupting): Well, it's in the record. There is nothing to keep it from being in the record.

"MR. NICHOLS: I mean that I requested . . .

"THE COURT (interrupting): I understand. You did request it and she is putting it down now—there is no need to go over it.

"MR. NICHOLS: I want to OBJECT then. The Statute . . .

"THE COURT (interrupting): He wants to enter an objection to the fact that plaintiff's attorney wouldn't let him have a statement that has been identified as plaintiff's exhibit fourteen but not offered in evidence.

"This constitutes

DEFENDANTS' EXCEPTION No. 1."

Defendants assign as error that the judge failed to require plaintiff's counsel to give to their counsel for inspection, and use if he deemed it desirable, the writing identified as Plaintiff's Exhibit #14, which writing plaintiff's counsel used in the cross-examination of defendant Miles. Plaintiff contends defendants' counsel never asked the court to require him to give the written statement to him, that the court made no ruling adverse to defendants on this question, that defendants' exception is to an act by opposing counsel, and that he never put the written statement in evidence. Plaintiff's exhibit #14 was not introduced in evidence, and is not in the record. Reading the colloquy between defendants' counsel and the trial judge, and the interruptions of the trial judge, it seems clear that defendants' counsel requested the court to compel plaintiff's counsel to give him this written statement for his inspection, and use if he deemed it desirable, and the court refused to do so. The failure of the judge to require plaintiff's counsel to accede to the re-

quest of defendants' counsel is prejudicial error entitling defendants to a new trial.

Before proceeding with a discussion of this question, we deem it proper to state that defendants offered evidence to the effect that the Stegall tractor sustained considerable damage in the collision, that Miles was injured in the collision and missed work for two weeks; and that defendants in their brief state they have abandoned their exceptions to their motions for judgment of involuntary nonsuit of plaintiff's action.

On the question presented by defendants' assignment of error based on their Exception 1, *People v. Carter*, 48 Cal. 2d 737, 312 P. 2d 665, rehearing denied 16 July 1957, is in point. In this case defendant was convicted of murder in the first degree, and the jury imposed the death penalty. Defendant contended that it was error to deny him the right to inspect a document used in the cross-examination of his wife. Mrs. Carter stated in cross-examination that she could not remember if defendant was wearing a red cap when he left the house on the morning of September 29. The prosecutor then asked her if she remembered being interviewed by the sheriff on September 30 when a stenographer was present, and read from the stenographer's transcript questions put to Mrs. Carter, and her answer that she believed defendant had been wearing a cap. Defense counsel requested and was denied the right to inspect the transcript. In holding that this was error, the Supreme Court of California said:

> "* * *It is clearly unfair to deny the defendant an opportunity to show that the extracts have been taken out of context, and that when read with other parts of the statement the alleged inconsistency disappears. To be effective such an opportunity must include the right to see the transcript the prosecution has used; the witness' memory of what he said is not enough. See *People v. Stevenson*, 103 Cal. App. 82, 88-92, 284 P. 487; *Meadors v. Commonwealth*, 281 Ky. 622, 136 S.W. 2d 1066, 1068-1069; 6 Wigmore, Evidence, 477 (3d ed. 1940)."

The case of *Burnell v. British Transport Commission* (1956), Law Reports, 1 Queen's Bench Division 187, (1955), 3 All England Law Reports 822, is in point. In this case plaintiff brought an action for damages for negligence against the defendants, who obtained a signed statement from a Mr. Anzani, who at the trial was called as a witness for the plaintiff. With the statement in his hands, counsel for the defendants asked the witness in cross-examination whether he had not given the statement and whether he had said certain things in it. The

witness agreed. Counsel for the plaintiff claimed the right to call for the statement and to require it to be put in evidence, and Sellers, J., ruled that he was entitled to do so. In the Court of Appeal the case was heard by Denning, Hodson, and Morris, L.JJ. In his opinion, Denning, L.J., said:

"It seems to me that Sellers, J., was correct, because, although this statement may well have been privileged from production and discovery in the hands of the defendants at one stage, nevertheless, when it was used by cross-examining counsel in this way, he waived the privilege, certainly for that part which was used; and in a case of this kind, if the privilege is waived as to the part, I think it must be waived also as to the whole. It would be most unfair that cross-examining counsel should use part of the document which was to his advantage and not allow anyone, not even the judge or the opposing counsel, a sight of the rest of the document, much of which might have been against him. So it seems to me that the ruling of Sellers, J., was correct. It was in accordance with the practice as I have always understood it. Since the Evidence Act, 1938, once the document was legitimately in the presence of the court, it would be admissible as evidence under that Act also. I think, therefore, that Sellers, J., was right and that we should look at the document, just as he did."

Hodson, L.J., said:

"I agree on the question of waiver and on the question of privilege. I only add this, that there is no suggestion in this case that anything unfair was done or sought to be done. A stand has been taken on a question of principle, as it was thought, on behalf of the defendants, not necessarily having in mind this case, but other cases in which this sort of problem arises."

Morris, L.J., said:

"I agree with what has been said by my Lords."

*People v. Karoll*, 315 Mich. 423, 24 N.W. 2d 167, is another case in point. Defendant was convicted of giving a bribe to a public agent, servant or employee, and appealed. Defendant had been questioned by the grand jury in regard to the bribery alleged. During his trial, upon cross-examination the prosecutor asked defendant whether he had been asked certain questions and had given certain answers before the grand jury. The court denied the request of counsel to see all of defendant's own testimony given before the grand jury at the time

and place referring to the same subject matter, isolated parts of which testimony were read and used in cross-examination of defendant. Defendant's counsel was only permitted to see the questions and answers that had been read into the record by the prosecuting attorney. The Court in its opinion said:

> "In the present case, there was no reason given for refusing defense the right to see all of defendant's testimony given. There can be readily seen the absolute injustice and unfairness of picking out isolated sentences of testimony of a witness before the grand jury, when he is made a defendant in a subsequent case, and denying him the right to see the testimony so that his counsel may bring out any explanatory matters relevant to these isolated answers, if this can be done without jeopardizing the work of the grand jury. A denial without a good reason is improper and should not be repeated on a new trial."

A new trial was ordered.

To the same effect see *State v. George,* 93 N.H. 408, 43 A. 2d 256; 6 Wigmore, Evidence, 3rd Ed., p. 477.

What is said in the majority opinion in *S. v. Peacock,* 236 N.C. 137, 72 S.E. 2d 612, is apposite. In this case defendant objected to the use of notes and memoranda by the two officers, claiming that the witnesses were reading the notes to the jury and not using them for the purpose of refreshing their memories, and further that the notes and memoranda were not offered in evidence. The majority opinion states:

> "The use of notes to quicken the memory is well recognized procedure in this jurisdiction, if the memorandum is one which had been made by the witness, or in his presence, or under his direction. * * * Under certain circumstances, even notes of the testimony of a witness given at a former trial may be read to him for the purpose of refreshing his memory. * * *
>
> "It is customary for such notes to be made available to the opposing counsel so that he may examine and cross-examine relative thereto * * *."

Plaintiff's counsel having a written statement by defendant Miles at the trial, and having had Miles in cross-examination to read isolated parts of it to the court and jury, it is a decided dictate of fairness and justice for the court to require him to submit it to defendants' counsel for his inspection, and use of it if he deems it desirable. Under similar circumstances it has been the practice for many years in our trial courts for the court to require the submission of such written statement to op-

posing counsel for inspection, as we understand it. For the trial court's failure to compel plaintiff's counsel to submit this written statement for inspection to the counsel for defendants, they are entitled to a New trial.