*In re* MURCHISON.

1. CONTEMPT—EVIDENCE—PERJURY.
Evidence showing that defendant had appeared before judge of recorder's court while functioning as a one-man grand jury, and had then deliberately and knowingly testified falsely *held*, sufficient to sustain a conviction and sentence for contempt in subsequent contempt proceedings conducted by the judge in open court.

2. SAME—PERJURY IN PRESENCE OF COURT.
The fact that perjury is a crime for, which one committing it may be tried and punished does not necessarily establish that when committed in the presence of a court it may not, when exceptional conditions so justify, be the subject matter of a punishment for contempt; the one act constituting 2 offenses, one against the State and the other against the court.

Appeal from Recorder's Court for the City of Detroit; O'Hara (John P.), J. Submitted June 15, 1954. (Calendar No. 46,218.) Decided July 6, 1954. Rehearing denied September 8, 1954. Reversed by Supreme Court of the United States May 16, 1955.

Lee Roy Murchison was adjudged guilty of contempt of court for giving false testimony before one-man grand jury, and appeals. Affirmed.

*Frank G. Millard,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Gerald K. O'Brien,* Prosecuting Attorney, and *Joseph G. Rashid, John G. Gilmore* and *Samuel J. Torina,* Assistant Prosecuting Attorneys, for the people.

*Loomis, Jones & Colden (Charles W. Jones, William L. Colden* and *George Stone,* of counsel), for petitioner Murchison.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 12 Am Jur, Contempt § 17.
[1, 2] Perjury or false swearing as contempt. 11 ALR 342; 73 ALR 817.

BOYLES, J. This case is companion to *In re White,* *ante,* 140, heard herewith, both cases being appeals from sentences for contempt, on leave granted by this Court. The record here, by stipulation, consists of the application for leave to appeal, briefs, exhibits and testimony filed here on which leave to appeal was granted. The cases mainly involve the same questions and were argued and submitted together.

Both appellants claim that Judge O'Hara, of the recorder's court, did not have the power to hear and punish for contempt committed before him as a grand juror. That claim has been answered by the decision in the *White Case,* this day handed down, adversely to this appellant's contention, which now controls here.

In this case, Murchison claims that false swearing before the grand jury is not a contempt of court which can be punished as such; and that the record here does not factually support the finding that appellant swore falsely in the grand jury.

In the companion case, White was found guilty of contempt on the ground that he had refused to answer any questions before the grand juror unless his attorney was present, which demand was denied by the grand juror. In the instant case, as in the *White Case,* Murchison was cited to appear in recorder's court before Recorder's Judge O'Hara, the grand juror, to answer why he should not be punished for contempt in the grand-jury proceeding. A hearing was held thereon in open court, after due notice, and testimony was taken. Murchison was found guilty of contempt, upon a finding that he had testified falsely before the grand jury, based upon testimony taken at said hearing. The court reporter who had taken the testimony of Murchison in the grand jury was sworn and testified in open court before Judge O'Hara on the hearing of Murchison for contempt. In the grand jury, Murchison, a po-

liceman, had been sworn and had testified regarding the location of 945 St. Josaphats court, and when asked how many times he had been there said, none. He was asked whether he knew that 945 St. Josaphats court had been under observation for months by the police department as a headquarters for gambling, and answered, "I didn't know, because I am never down that way." In answer to the question how many times he had gone there in January, 1954, he answered, "None," and the same answer as to having been there in March. When asked whether he denied that he was there at any time that year, he answered, "I haven't been there." He further testified that he wouldn't even know exactly where 945 St. Josaphats would be, that if they had a picture of him there it couldn't be he, and denied repeatedly that he had ever been at that place.

The testimony in the hearing for contempt was squarely to the contrary. Said place was known as a place which a so-called numbers syndicate was occupying as headquarters for conducting gambling. It was material in the grand-jury proceedings to investigate whether Murchison knew of this place, was familiar with it and its use as the headquarters of a gambling syndicate; and to show any connection between the gambling syndicate and police officers. An inspector of the Detroit police department testified in the contempt proceedings that shortly after 8:40 a.m. on a certain morning in March, 1954, in company with a lieutenant of the police force, he saw Murchison at the above place. He identified Murchison, whom he had known for more than 5 years, both having been assigned to the same bureau in the police department. He further testified that a police lieutenant was there with him on said occasion and took pictures of Murchison while Murchison was on the front porch of 945 St. Josaphats. The police lieutenant testified that he took moving

pictures of Murchison on that occasion and at the above place; that he had been assigned to make observations of 945 St. Josaphats court, that he had known Murchison at least 10 years, and that he saw Murchison on that date at 945 St. Josaphats at about 8:40 a.m. He testified:

"*A.* When I first saw him, he was walking east on St. Josaphats. He came to the gate, to the entrance of 945 St. Josaphats, walked up on the front porch and rang the doorbell of 945 St. Josaphats. * * * He remained on the front porch for possibly 2 minutes, and then turned and went down off the porch, walked between the houses to the rear entrance of 945 St. Josaphats, where he again pushed the buzzer. He remained there for probably about a minute and a half or 2 minutes, and turned around and walked between the houses again, to the street, where he walked west on St. Josaphats towards Hastings street out of sight. * * * I took some pictures as Patrolman Murchison stood on the front porch of 945 St. Josaphats, and then after he had come from the rear of the house and started to walk west on St. Josaphats, I took some more pictures. * * *

"*Q.* I will show you proposed exhibit 1, witness, and ask you whether or not that is a photograph of the identical likeness of the identical structure which you observed at that time?

"*A.* Yes, it is.

"*Q.* And is the photograph of the human subject there identical with that of anyone known to you?

"*A.* It is.

"*Q.* And who?

"*A.* Patrolman Lee Roy Murchison. * * *

"*Q.* All right. Now, I am going to show you proposed exhibit 1–A, consisting of 11 photographs, and ask you the same questions with respect to them, namely, are they photographs of the physical structure at 945 St. Josaphats where you observed Lee Roy Murchison?

"*A.* They are.

"*Q.* And do you recognize the human being subject in the photograph?

"*A.* I do.

"*Q.* And who is that?

"*A.* Patrolman Lee Roy Murchison.

"*Q.* All right. And was Lee Roy Murchison in that position and at that point as observed in those photographs when you took them of him?

"*A.* He was."

The testimony leaves no doubt but that Murchison's testimony before the grand jury was deliberately and knowingly false. The testimony at the contempt hearing justified the finding of the recorder's court judge that Murchison had testified falsely in the grand jury.

Murchison made no claim of immunity during his testimony in the grand jury on the ground of constitutional immunity. The constitutional issue that he could not be compelled to answer without a waiver of prosecution is not involved here. He testified freely in the grand jury, and obviously falsely. Under the circumstances of this case, and the procedure followed, where a witness has been proven to have deliberately, knowingly and falsely testified before the grand jury as to facts material to the investigation there in progress, may he be sentenced for contempt; or must the judge leave the matter to a prosecution for perjury?

Doubtless there are situations where such acts might be both perjury and contempt. In this case, it was proper to hold Murchison in contempt.

"The fact that perjury is a crime for which one committing it may be tried and punished does not necessarily establish that when committed in the presence of a court it may not, when exceptional conditions so justify, be the subject matter of a punishment for contempt; the one act constituting two

offenses, one against the State and the other against the court." *In re Slattery* (syllabus), 310 Mich 458.

See, also, the prevailing opinion by Justice Fellows in *People* v. *Doe,* 226 Mich 5, 11.

Conviction and sentence affirmed.

Butzel, C. J., and Carr, Bushnell, Sharpe, Dethmers, and Kelly, JJ., concurred with Boyles, J.

Reid, J., concurred in the result.