*In re* COLACASIDES.

OPINION OF THE COURT.

1. STATUTES—INTENT—CONSTRUCTION—LEGISLATIVE OBJECTIVE.

The intended meaning of a statute must be determined from the statutory language, absent extrinsic evidence thereof, and that construction given most consistent with the permissible objectives sought by the statute.

2. GRAND JURY—ONE-MAN GRAND JUROR—MAXIMUM TERM.

No judicial officer, designated to serve as a one-man grand juror to investigate specified allegations of crime may do so for more than 2 consecutive 6-month periods, thereby limiting the time within which a particular judge may exercise the extraordinary powers of a grand juror (CLS 1961, § 767.4).

3. SAME — ONE-MAN GRAND JUROR — RESTRICTIONS — SUBSEQUENT GRAND JURY.

The limitation of 1 year upon the inquiry by a one-man grand juror into specific allegations of crime and disqualification for appointment or election to other than his judicial office for a year following termination of inquiry extending over 30 days evidence the legislature's awareness of the extraordinary power possessed by one-man grand juror and do not foreclose inquiry by another one-man grand juror into the same criminal activity beyond the year; hence, a one-man grand jury investigation of subject matter investigated by a prior grand jury is permissible (CL 1948, § 767.3, as amended by PA 1965, No 251; CLS 1961, § 767.4).

REFERENCES FOR POINTS IN HEADNOTES

[1] 50 Am Jur, Statutes § 223 *et seq.*
[2, 3, 15–17] 24 Am Jur, Grand Jury § 13.
[4] 24 Am Jur, Grand Jury § 48 *et seq.*
[5–13, 18–20, 22] 24 Am Jur, Grand Jury § 37.
Privilege against self-incrimination as to testimony before grand jury. 38 ALR2d 225.
[14] 24 Am Jur, Grand Jury § 33.
[21] 5 Am Jur 2d, Appeal and Error § 1009.

4. SAME—ONE-MAN GRAND JUROR—SUBSEQUENT GRAND JURY—REC-
ORDS OF PRIOR GRAND JURY—SECRECY.

A subsequent one-man grand juror, investigating specified allega-
tions of crime, may properly be permitted access to the records
of a prior grand juror within scope of subsequent inquiry,
transferred by order of the Supreme Court, and subject to
the statutory secrecy provisions (CL 1948, § 767.3, as amended
by PA 1965, No 251; CLS 1961, §§ 767.4, 767.6).

5. CONTEMPT—ONE-MAN GRAND JURY—PRIOR GRAND JURY—IMMU-
NITY.

Conviction of contempt for refusal of witness to answer current
one-man grand juror's questions predicated upon tangible evi-
dence obtained initially by a prior one-man grand juror, whose
records were ordered transferred by Supreme Court to current
one-man grand juror, *held*, not vulnerable to attack because
evidence had been obtained in the first instance by prior
one-man grand juror, where the current one-man grand juror
has granted to the witness immunity from all subsequent
prosecution for any offense concerning which any responsive
answer to the questions may tend to incriminate the witness
(CL 1948, § 767.3, as amended by PA 1965, No 251; CLS
1961, §§ 767.4, 767.6).

6. GRAND JURY—WITNESS—IMMUNITY.

An order of immunity to a witness, granted in accordance with
the one-man grand jury statute, must be read in the light of
the statute as it has been interpreted by the Supreme Court
(CLS 1961, § 767.6).

7. SAME—WITNESS—SCOPE OF IMMUNITY—SELF-INCRIMINATION.

Immunity granted by the State in a one-man grand jury pro-
ceeding, to be valid, must accord the witness immunity as
broad as both Federal and State constitutional guarantees of
the privilege against self-incrimination (US Const, Ams 5,
14; Mich Const 1963, art 1, § 17).

8. SAME—WITNESS—SCOPE OF IMMUNITY—PENDENCY OF PROSECU-
TION.

A one-man grand juror's grant of immunity from prosecution
for crimes based on answers obtained as a result of such grant
extends to all prosecutions, including a pending prosecution
commenced, but not yet tried (CLS 1961, § 767.6).

9. SAME—WITNESS—SCOPE OF IMMUNITY—ORDER.

A one-man grand juror is not required to describe in his order
granting immunity every proceeding covered by the immunity
(CLS 1961, § 767.6).

10. SAME—WITNESS—SCOPE OF IMMUNITY—LICENSE FORFEITURE.
    The privilege against self-incrimination as delimited in the revised judicature act is recognized as extending to answers which will tend to expose witness to any penalty or forfeiture as well as to subsequent criminal prosecutions; hence, immunity to prosecution conferred on witness pursuant to one-man grand jury statute precludes forfeiture or revocation of alcoholic beverage license on basis of information gained by grand juror from testimony given after grant of immunity (US Const, Ams 5, 14; Mich Const 1963, art 1, § 17; CLS 1961, §§ 436.20, 600.2154, 767.6).

11. SAME—WITNESS—SCOPE OF IMMUNITY—ORDER.
    The scope of immunity granted to witness by order of one-man grand jury, and the proceedings to which it applies, of necessity are matters of judicial construction to be determined when controversy arises as to the extent of immunity (CLS 1961, § 767.6).

12. SAME—WITNESS—IMMUNITY—ORDER.
    Witness granted immunity by one-man grand jury to compel his testimony does not have the right to a demonstration by the grand jury to his subjective satisfaction that immunity extends to a specific proceeding then in being or to some possible proceeding in the future (CLS 1961, § 600.2154).

13. SAME—WITNESS—IMMUNITY—ORDER—DEMONSTRATION.
    One-man grand juror need do no more than state in written order granting immunity that witness is granted "immunity * * * from all subsequent prosecution for any offense concerning which any responsive answer to such questions may have tended to incriminate him," it not being required that the State demonstrate to the subjective satisfaction of the witness that the immunity offered extended to a specific proceeding then in being or to a possible proceeding in the future (CLS 1961, §§ 600.2154, 767.6).

14. CONSTITUTIONAL LAW — INVESTIGATION OF CRIME — EXECUTIVE FUNCTION.
    Normally the function of investigating the occurrence of crime is performed by the executive branch of government as part of its duty to enforce the laws (Const 1963, art 3, § 2).

15. SAME—INVESTIGATION OF CRIME—POLICE AGENCIES—COMPULSION OF TESTIMONY—IMMUNITY.
    The common-law grand jury is unwieldy and ineffective in the investigation of crime, especially organized crime and gov-

ernmental corruption, and police agencies do not possess the extraordinary powers to compel the attendance of witnesses at an investigation and to compel their testimony by extending them immunity from prosecution (Const 1963, art 3, § 2).

16. Same—Separation of Powers—Conservator of the Peace—Investigation of Crime—Circuit Judges.

Conservators of the peace at common law possessed power to investigate crime for the purpose of apprehending offenders; circuit judges now possess such investigatory powers as such conservators under the State Constitution, and, therefore, exercise of such power as oné-man grand juror does not violate the State constitutional provision on separation of powers (Const 1963, art 3, § 2, art 6, § 29).

17. Grand Jury—Circuit Judges—Witnesses—Subpoena—Immunity—Conservator of the Peace.

Circuit judges can properly exercise the subpoena power and the power to grant immunity to a witness in order to compel testimony, and, since they are also conservators of the peace, they may function as a one-man grand jury to investigate criminal activity without violating the separation of powers provision of the Constitution (Const 1963, art 3, § 2, art 6, § 29; CLS 1961, §§ 600.2154, 767.6).

18. Contempt—One-Man Grand Jury—Witness—Immunity—Refusal to Answer Questions.

The power to punish a witness for contempt after he has been granted immunity from prosecution but persists in refusing to answer questions by a one-man grand juror, does not depend on whether the grand juror is exercising a judicial or an executive function, since there is no constitutional bar for imposing such stricture (CLS 1961, § 767.6).

19. Same—One-Man Grand Jury.

Contempt proceedings conducted in public by a judge other than the grand juror who subpoenaed the witness, granted him immunity, and following continued refusal to answer the questions responsively, cited him for contempt, held, proper (Const 1963, art 3, § 2, art 6, § 29; CLS 1961, §§ 600.2154, 767.6).

20. Grand Jury — Due Process — Witnesses — Immunity — Contempt.

One-man grand jury statute held, not a denial of. due process insofar as it concerns witnesses who are subpoenaed to testify and subjected to contempt proceedings for failure to do so after having been granted immunity, in view of the safeguards

afforded witnesses through presence and assistance of counsel during examination, conduct of contempt and other proceedings in public by a different judge, limitation of investigative proceedings to purpose specified for scope of inquiry, enforced secrecy, presence of grand juror while testimony is taken, grant of immunity coextensive with privilege against self-incrimination, and availability of transcript and record for relevant appeal or other judicial proceeding (US Const, Ams 4, 5, 6, 14; Mich Const 1963, art 1, § 17; CLS 1961, §§ 600.2154, 767.4, 767.6; CL 1948, § 767.3, as amended by PA 1965, No 251).

21. COSTS — CONSTITUTIONAL LAW — ONE-MAN GRAND JURY — WITNESSES—CONTEMPT.

No costs are allowed on appeal from adjudication that appellant was in contempt for failure to answer questions put to him by one-man grand jury after having been granted immunity, constitutional issues being involved (US Const, Ams 4, 5, 6, 14; Mich Const 1963, art 3, § 2, art 6, § 29; CLS 1961, §§ 600-.2154, 767.4, 767.6; CL 1948, § 767.3, as amended by PA 1965, No 251).

### SEPARATE OPINIONS.

KELLY, T. M. KAVANAGH, and ADAMS, JJ.

22. GRAND JURY—ONE-MAN GRAND JURY—JUDGE.

*A judge who conducts a one-man grand jury proceeding acts in a judicial capacity (CL 1948, § 767.3, as amended by PA 1965, No 251; CLS 1961, §§ 767.4, 767.6).*

Appeal from Wayne; Kaufman (Charles), J. Submitted March 22, 1967. (Calendar No. 5, Docket No. 51,721.) Decided April 19, 1967. Rehearing denied May 3, 1967. Opinion amended July 21, 1967.

Costas (Gus) Colacasides was convicted of contempt for refusal to answer questions before a one-man grand jury after having been granted immunity. Upon denial of bail by the Court of Appeals pending appeal and upon application for leave to appeal therefrom to the Supreme Court, that Court granted bail in the amount of $50,000 and ordered the appeal on the merits submitted to it directly on

briefs on a curtailed time schedule.   Judgment of contempt affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Robert C. Goussy,* Assistant Attorney General, for the people.

*Louisell & Barris,* for defendant.

Souris and O'Hara, JJ.   This is an appeal on leave granted by this Court from the circuit court for Wayne county, bypassing the Court of Appeals pursuant to GCR 1963, 852.[1]

Appellant was found guilty of contempt, by the Honorable Charles Kaufman, a judge of the Wayne circuit court, for refusal to testify in a one-man grand jury proceeding presided over by the Honorable George E. Bowles, also a judge of the Wayne circuit court.   Judge Kaufman sentenced appellant to six months' confinement in the Detroit house of correction, or until the expiration of the above designated grand jury, or until such time as he should purge himself of such contempt by answering the questions addressed to him in the grand jury proceeding.   Upon his initial refusal to answer the questions, appellant was ordered so to do under a grant of immunity by the grand juror.   The grant of immunity was from all subsequent prosecution for any offense concerning which any responsive answer to such questions may have tended to incriminate appellant.

Appellant challenges his conviction for contempt on multiple grounds.   He contends that the one-man grand jury proceeding from which his contempt conviction resulted is an illegal extension of a prior one-man grand jury beyond the one-year period allowed

[1] See *In re Colacasides (On Application for Bail),* 6 Mich App 298,

such juries by statute and that his contempt conviction, therefore, is void. He also contends that the immunity granted him is not coextensive with his privilege against self-incrimination guaranteed by the Fifth Amendment to the United States Constitution; that, furthermore, the State failed to demonstrate to him the nature and extent of the immunity granted; and that, therefore, his contempt conviction for refusing to answer the grand juror's questions violates his rights guaranteed him by the Fifth Amendment. Finally, he urges that his contempt conviction is void because it arose out of proceedings conducted under our one-man grand jury statute which he claims violates "the doctrine of separation of powers", by which we presume he means that it violates Const 1963, art 3, § 2, and, as well, that it violates the due process clause of the Fourteenth Amendment to the United States Constitution.

The questions put to him by the grand juror all relate to so-called "little black books" seized in the appellant's restaurant-tavern. In it are entries purported to be in the handwriting of appellant and allegedly showing payments of money to Detroit police officers presumably as bribes to induce the officers to refrain from enforcing the law as to defendant.

We conclude that the Bowles grand jury is not an illegal extension of a preceding one-man grand jury; that the immunity granted appellant is as broad as is required by the Fifth Amendment's guarantee against self-incrimination; that the State performed its obligation of advising appellant of its grant of immunity to him; that the one-man grand jury statute does not violate either our State Constitution's separation of powers provision or the Fourteenth Amendment's due process clause; and that, therefore, the appellant's contempt conviction for refusal

to answer the grand juror's questions must be affirmed.

## I.

Appellant contends that Grand Juror Bowles exceeded the permissible scope of his inquiry when he put questions to appellant relating to the "little black books" seized by a previous one-man grand jury presided over by the Honorable Edward S. Piggins, another of the judges of the Wayne circuit court, and that appellant's refusal to answer those questions, therefore, was not conduct punishable as contempt. His theory is that the statute, CLS 1961, § 767.4 (Stat Ann 1954 Rev § 28.944), imposes a 12-month time limit upon grand juror inquiry into the subject matter of any granted petition for such inquiry and that no subsequent grand juror thereafter can investigate the same subject matter. The pertinent portion of the cited statute, added by PA 1951, No 276, reads as follows:

"No inquiry or proceeding hereunder shall continue longer than 6 months unless extended by specific order of the said judge or his successor for an additional period not to exceed 6 months."

The record before us discloses that while Grand Juror Piggins was conducting his inquiry certain documents came into his possession on the basis of which this appellant and another person were indicted for conspiracy to bribe a Detroit police officer. Judge Piggins served as grand juror for two successive six-month periods ending in August of 1966. Shortly before expiration of the Piggins grand jury, the judges of the Wayne circuit court granted a petition by the attorney general for another Wayne county one-man grand jury inquiry and Judge Bowles thereafter, on September 8, 1966, was designated by his colleagues to conduct it. On

January 6, 1967, upon Judge Bowles' petition, this Court ordered transferred to Judge Bowles certain of the records of the Piggins grand jury which had been filed with the clerk of this Court pursuant to CLS 1961, § 767.6a (Stat Ann 1954 Rev § 28.946[1]). Our order of January 6, 1967 is set forth, in full, in the margin.[2]

Later in January, 1967, appellant was subpoenaed to appear before Grand Juror Bowles and was asked the questions for his refusal to answer which he was cited and subsequently convicted of contempt. The questions related to certain documents transferred by our order to the Bowles grand jury from those deposited with us by the Piggins grand jury. These documents were the evidentiary basis upon which

---

[2] "In the Matter of the Petition of George E. Bowles, Grand Juror

"The petition of George E. Bowles, grand juror, for an order of this Court authorizing petitioner or any member of his staff to take custody of boxes 1 through 13 of the Judge Edward S. Piggins grand jury records from the clerk of this Court having been duly considered,

"IT IS ORDERED BY THE COURT, That the clerk of this Court is hereby directed to deliver to Grand Juror George E. Bowles, or a member of his staff designated therefor by Grand Juror George E. Bowles in writing, boxes 1 through 13 of the records of the Edward S. Piggins grand jury and to take a receipt for such records;

"IT IS FURTHER ORDERED, That Grand Juror George E. Bowles shall obtain all synopses of testimony, dockets, journals, reporters' notes, transcripts, exhibits, and all other records, originals or duplicates, not heretofore filed by the Edward S. Piggins grand jury with this Court, whether in the hands of the Michigan State police or the Detroit police department or any other person or persons, and shall deliver an inventory of the same and a receipt therefor to the clerk of the Supreme Court;

"IT IS FURTHER ORDERED, That said records be kept in the possession of Grand Juror Bowles until the further order of this Court in the same manner and subject to the same conditions of secrecy as are provided by statute for all other records acquired during the course of the grand jury inquiry and that, pursuant to statute, they may be made available to the State of Michigan for its lawful use thereof in prosecutions and other proceedings arising out of the Edward S. Piggins grand jury.

                              Sgd. JOHN R. DETHMERS
                              _____
                                   Chief Justice

Dated: January 6, 1967"

appellant had been indicted by Grand Juror Piggins for conspiracy to bribe a police officer. Appellant has not yet been tried on this indictment.

We do not accept as correct appellant's construction of the above-quoted provision of the statute, that is to say, that no grand juror may investigate the subject matter of a prior one-man grand jury. The quoted language added to the statute by PA 1951, No 276, does not indicate intrinsically the legislature's purpose, nor has our attention been directed to anything extrinsic of the statutory amendatory language from which we can discern that legislative purpose. We must determine the legislature's meaning from the statutory language alone, therefore. While it may be conceded that the language is not literally inconsistent with the construction put upon it by appellant, that is not the only construction consistent with its terms, nor is it the construction we believe most consistent with the permissible objectives sought to be achieved by the one-man grand jury law.

We construe the above-quoted statutory language to mean that no judicial officer designated to serve as a one-man grand juror to investigate specified allegations of crime may do so for more than two consecutive six-month periods. By this provision we believe the legislature manifested its intent to limit the time within which a particular judge could exercise the extraordinary powers of a grand juror. That a grand juror's powers are extraordinary, for a judicial officer, will be considered subsequently in this opinion. That the legislature was aware of the possible political consequences of such power is manifest in that part of CL 1948, § 767.3, as amended, PA 1965, No 251 (Stat Ann 1965 Cum Supp § 28.943) quoted in the margin.[3] We perceive no rational leg-

[3] "Any judge, prosecuting attorney or special prosecuting attorney, or the attorney general participating in any inquiry under this sec-

islative purpose in foreclosing one-man grand jury inquiry into any particular criminal activity beyond the period of one year, but we do perceive a rational purpose, manifested by the above-quoted provision from PA 1951, No 276, and that portion of CL 1948, § 767.3, as amended, quoted in the margin, to limit to one year the exercise by any particular judge of the extraordinary powers of inquiry authorized by our one-man grand jury law. Thus construed, the time limitation of CLS 1961, § 767.4 is a time limitation upon the judicial officer performing duties as a one-man grand juror, and not a time limitation upon grand juror inquiry into a specific subject of criminal activity. So construed, the statute would not preclude a grand juror's investigation of the subject matter investigated by a prior grand juror, provided, of course, that the subject of inquiry is within the proper scope of inquiry of the second grand juror.

Because we construe the time limitation as affecting the grand juror, rather than the inquiry, another issue is presented: may one grand juror utilize the evidence produced by a predecessor grand juror? Pertinent to this issue are the so-called secrecy provisions of CL 1948, § 767.3, as amended (Stat Ann 1965 Cum Supp § 28.943), CLS 1961, § 767.4 (Stat Ann 1954 Rev § 28.944), and CLS 1961, § 767.6 (Stat Ann 1954 Rev § 28.946), the pertinent provisions of which are italicized in the margin.[4]

---

tion which continues more than 30 calendar days shall thereafter be disqualified from appointment or election to any office other than one held at the time of the inquiry. The disqualification shall not extend more than 1 year from date of termination of the inquiry, as determined by final order of the judge entered prior to such date."

[4] "Any person called before the grand jury shall at all times be entitled to legal counsel not involving delay and he may discuss fully with his counsel all matters relative to his part in the inquiry without being subject to a citation for contempt. The witness shall have the right to have counsel present in the room where the inquiry is held. *All matters revealed to the attorney shall be subject to the requirements of secrecy in section 4, and any revelation thereof by*

We construe the statutory provisions italicized in the margin to permit access by one grand juror to

*the attorney shall make him subject to punishment as provided in section 4. No testimony shall be taken or given by any witness except in the presence of the judge."* (CL 1948, § 767.3, as amended in PA 1965, No 251 [Stat Ann 1965 Cum Supp § 28.943].)

*"Except in cases of prosecutions for contempt or perjury against witnesses who may have been summoned before the judge conducting such inquiry, or for the purpose of determining whether the testimony of a witness examined before such judge is consistent with or different from the testimony given by such witness before a court in any subsequent proceeding, or in cases of disciplinary action against attorneys and counselors in this State, any judge conducting such inquiry, any prosecuting attorney and other persons who may at the discretion of such judge be admitted to such inquiry, who shall while conducting such inquiry or while in the services of such judge or after his services with such judge shall have been discontinued, utter or publish any statement pertaining to any information or evidence involved in any such inquiry, or who shall disclose the fact that any indictment for a felony has been found against any person not in custody or under recognizance, or who shall disclose that any person has been questioned or summoned in connection with any such inquiry, or who shall disclose or publish or cause to be published any of the proceedings of such inquiry otherwise than by issuing or executing processes prior to such indictment, or shall disclose, publish or cause to be published any comment, opinion or conclusions related thereto, shall be guilty of a misdemeanor punishable by imprisonment in the county jail not more than 1 year or by a fine of not less than $100.00 nor more than $1,000.00, or both such fine and imprisonment in the discretion of the court, and such offense when committed by a public official shall also constitute malfeasance in office. Upon the termination of such inquiry if the judge shall make no presentment of crime or wrongdoing as to any person or persons whose apprehension or removal from office he has not so caused, he may, in his discretion, with the consent of the person who may be named, file with the clerk of the county in which such inquiry has been conducted, a report of no finding of criminal guilt as to any person or persons involved in such inquiry, either as witness or otherwise, whose involvement in such inquiry has become public."* (CLS 1961, § 767.4 [Stat Ann 1954 Rev § 28.944].)

"No witness shall upon such inquiry be required to answer any questions, or shall be convicted for contempt upon refusal to do so, when the answers might tend to incriminate him. A written order granting to such witness immunity from such incrimination may be entered by said judge pursuant to a written motion by the prosecuting attorney or other duly authorized representative of the State in such proceeding; which order shall set forth verbatim the questions which such witness refused to answer. A true copy of such motion and order shall be delivered to such witness before he shall answer such questions. The order granting immunity so made shall thereafter extend to all related questions which may thereafter be put to such witness until such judge advises the witness that said immunity no longer applies. All such questions and the answers thereto shall be reduced to writing under the direction of such judge and a true copy

the records of a prior grand juror upon order of this Court, but subject to the secrecy provisions of CLS 1961, § 767.4 which attach to all information or evidence coming to the attention of a grand juror's inquiry. We perceive no reason for requiring a grand juror to retrace the path of a predecessor grand juror, considering the availability of the desired evidence and the convenience of the witnesses.

On the foregoing basis, this Court entered its order of January 6, 1967.[5]  On the basis of tangible evidence obtained initially by the Piggins grand jury, Grand Juror Bowles asked certain questions appellant refused to answer notwithstanding the immunity granted to him. We conclude that appellant's conviction for contempt for refusal to answer is not vulnerable to attack because predicated upon evidence obtained in the first instance by another grand juror.

## II.

### A.

Appellant's principal argument on this appeal is that the immunity granted him, to induce his answering the questions put to him, is not coextensive with the Fifth Amendment to the United States Consti-

---

of such transcript, duly certified by such judge, shall be delivered to such witness as soon as practicable thereafter. *The provisions for secrecy provided for in section 3 hereof shall apply to all copies of such motion, order and transcript so delivered to such witness except that the witness may be privileged to disclose the same to his attorney if such witness should thereafter be prosecuted for any offense directly or indirectly growing out of any testimony given by him in such inquiry.* No person required to answer such questions shall thereafter be prosecuted for any offense concerning which such answers may have tended to incriminate him. No such order granting immunity shall extend beyond the scope of such inquiry, nor shall it extend beyond the particular questions set forth in any such motion, order or transcript." (CLS 1961, § 767.6 [Stat Ann 1954 Rev § 28.946].)

[5] See footnote 2, *supra*.

tution, and therefore, that he could not be convicted legally of contempt for invoking the Fifth Amendment's privilege against self-incrimination. He insists that the immunity granted was not coextensive with his Fifth Amendment privilege because it failed to specify that this immunity extended to a prosecution presently pending in the recorder's court of the city of Detroit; to a possible prosecution on a charge which was theretofore dismissed as to appellant on preliminary examination, and as to which he was not in jeopardy; and to possible forfeiture proceedings aimed at revoking his restaurant and alcoholic beverage licenses. The prosecutions in recorder's court are for conspiracy to bribe and bribery of Detroit city police officers.

The order of immunity granted by Grand Juror Bowles reads, in pertinent part, as follows:

"IT IS THEREFORE ORDERED that said GUS COLACASIDES be and he hereby is directed to forthwith responsively answer said questions and all related questions which may hereafter be put to said witness, and, in accordance with said statute, this court does hereby grant immunity to said GUS COLACASIDES from all subsequent prosecution for any offense concerning which any responsive answer to such questions may have tended to incriminate him."

Appellant argues that the phrase "subsequent prosecution" is too narrow in view of the scope of the self-incrimination rights granted by the State[6] and Federal Constitution. The people counter by arguing that *In re Watson* (1940), 293 Mich 263, a case with facts paralleling this Colacasides case,

[6] "No person shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property, without due process of law. The right of all individuals, firms, corporations and voluntary associations to fair and just treatment in the course of legislative and executive investigations and hearings shall not be infringed." Const 1963, art 1, § 17.

settles the issue in favor of the validity of the grant of immunity.

Looking to the language of the order, one notes that immunity is granted "in accordance with said statute." The statute earlier in the order was described as "the statute in such case made and provided", which means CLS 1961, § 767.6 (Stat Ann 1954 Rev § 28.946), set forth in the margin, *supra*, at pp 80, 81.

Appellant does not challenge the validity of section 767.6; rather, his attack is upon the immunity order that was issued pursuant to the statutory provision. That order, however, must be read in the light of the statute as it, in turn, was interpreted by this Court in *Watson, supra.*

In *Watson*, the Court used broad language in finding the one-man grand jury immunity provision constitutional. Said the Court (p 277):

"The grant of immunity from crime is a large responsibility. The legislature, acting in the public interest for the detection and suppression of crime, has lodged this extraordinary power in the discretion of the magistrate, and the immunity granted extends to any prosecution by the State for any offenses that may be disclosed by the answers of the witness or for any offenses to which such testimony may lead."

Earlier the Court had said (p 276):

"The witness shall not 'thereafter be prosecuted for *any* offense concerning which such answers may have *tended* to incriminate him'; and we construe the statute to afford a protection against prosecution by the State *as broad as the Constitutional provision securing the privilege against self-incrimination.*" (Emphasis added.)

Although the present immunity statute differs from the one quoted in *Watson,* the present statute contains parallel language:

"No person required to answer such questions shall thereafter be prosecuted for any offense concerning which such answers may have tended to incriminate him."

*Watson,* then, gives CLS 1961, § 767.6 as broad a scope as the Federal privilege against self-incrimination. See *Malloy* v. *Hogan* (1964), 378 US 1 (84 S Ct 1489, 12 L ed 2d 653). We conclude that the following statement, from *Malloy,* is a principle of law binding upon us (p 8):

"The Fourteenth Amendment secures against State invasion the same privilege that the Fifth Amendment guarantees against Federal infringement—the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty, as held in *Twining* [*Twining* v. *New Jersey* (1908), 211 US 78 (29 S Ct 14, 53 L ed 97)] for such silence."

and that *Watson* gives Michigan's immunity statute a scope as broad as the *Malloy* decision requires.

Thus we conclude that *Watson,* instead of being a "judicial relic", as appellant contends, construes section 767.6 to be consistent with our Federal and State constitutional requirements. The immunity order explicitly says the immunity grant is in accordance with the statute, and the statute, as interpreted by *Watson,* gives immunity coextensive with the privilege. The statute, and the order issued thereunder, thus are constitutionally valid. We need determine only whether the privilege and, thus, the granted immunity apply to preclude use of the evidence sought from appellant in criminal proceedings now pending and in any subsequent license forfeiture proceedings.

The *Watson Case* has specific application to the pending prosecution, for the defendant in that case was already a defendant in a criminal case when the grand juror called upon him for testimony. In *Watson* the Court referred to *In re Kittle* (CA 2, 1910), 180 F 946, as a case which "properly announces the rule." The following language from Judge Learned Hand's opinion in *Kittle* supports our conclusion that testimony taken from appellant by the grand juror may not be used in the pending prosecution (p 947):

"I shall assume that the inquiry is of the subject matter of some crime, and, indeed, of the crime laid in the existing indictment. When so questioned, the witness must answer. * * * And, when given, his answer will thereafter protect him from further prosecution. *It will be a good bar to this very pending prosecution, if it be pertinent to the subject matter.*" (Emphasis added.)

The *Watson* decision adopted the foregoing language as its own, and its application to the present situation means that matter obtained by the grand juror would not be usable—either by itself or as a lead—in the pending prosecution. Appellant's fears concerning the pending case against him thus are unfounded—at least insofar as they are based on information the grand juror has requested.

The *Watson Case,* by its express terms, applied to the pending prosecution against the defendant Watson. We do not believe we are obligated to anticipate that the judge in the pending prosecution will incorrectly apply the law of that case, and we decline to do so. The grand juror, in granting immunity, is not required to list every proceeding covered by the immunity for the rather obvious reason that the statute and the *Watson Case,* by their terms, apply to prosecution for *any* offense, directly or indirectly

growing out of any testimony given by him. The
prosecution which appellant complains is not
covered by the grant of immunity is "pending."
Since it is "pending" it has not taken place. Since
it has not taken place it can be nothing but "subse-
quent" to the proceedings before the grand juror.
The grant of immunity extended to it.

The next question is that of the use of the com-
pelled answers in any possible future license forfei-
ture proceedings. The following language of the
revised judicature act, presumably based upon the
Federal and State privileges against self-incrimina-
tion, is in point:

"Any competent witness in a cause shall not be
excused from answering a question relevant to the
matter in issue, on the ground merely that the an-
swer to such question may establish, or tend to es-
tablish, that such witness owes a debt, or is other-
wise subject to a civil suit; but this provision shall
not be construed to require a witness to give any
answer which will have a tendency to accuse himself
of any crime or misdemeanor, or to expose him to
any penalty or forfeiture, nor in any respect to vary
or alter any other rule respecting the examination
of witnesses." CLS 1961, § 600.2154 (Stat Ann 1962
Rev § 27A.2154).

This statute states the legislature's understanding
of the scope of the privilege against self-incrimina-
tion. Although the statute may not be all-inclusive,
according to constitutional standards, it expressly
prohibits a witness from being exposed to a forfei-
ture if he is required to give testimony. We draw
two conclusions from the provision: first, that a
license forfeiture may not be imposed because of
testimony or leads from such testimony if appellant
is required to testify despite his assertion of the
privilege against self-incrimination; and, second,
that the immunity granted under section 767.6 must

be at least as broad as the judicature act provision, thus precluding a forfeiture of license after immunity has been granted, that is, a forfeiture ordered solely on the basis of information or leads gained by the grand juror after such grant of immunity.

## B.

Another aspect of appellant's immunity argument merits our attention. He claims that before a witness who has been granted immunity can be convicted of contempt for refusal to answer questions put to him, he must be apprised of "the nature and extent of said immunity." For this proposition appellant relies upon *Raley* v. *Ohio* (1959), 360 US 423 (79 S Ct 1257, 3 L ed 2d 1344), and *Stevens* v. *Marks* (1966), 383 US 234 (86 S Ct 788, 15 L ed 2d 724). He concludes that because he was not advised by the grand juror whether the grant of immunity extended to the currently pending criminal prosecution against him and to alcoholic beverage license forfeiture proceedings, his contempt conviction was invalid.

Neither *Raley* nor *Stevens* stands for the proposition for which appellant cites them. In *Raley,* the witnesses were not advised at a legislative hearing that a State statute granted them immunity. In *Stevens,* investigators tried to hold the witness to a waiver of immunity. In both cases the Supreme Court reversed contempt convictions, not because, as appellant asserts, the witnesses were not advised of "the nature and extent" of the immunity granted them but, rather, because the witnesses were left in doubt as to whether they had any immunity whatsoever. In this case of Colacasides, on the other hand, appellant was not only advised orally that he was granted immunity but, as well, and pursuant to

statutory requirement,[7] a copy of the order granting immunity was given to appellant who, at all times, was represented by counsel. Nor does appellant deny that he was advised of the grant of immunity. His attack on this point is that the grand juror failed to specify exactly what lies within the scope of the immunity granted. Furthermore, he claims that Federal requirements are not met by our determination now of the scope of the immunity granted but, instead, that its scope should have been "demonstrated" to him by the grand juror at the time of the grant of immunity.

As authority for this proposition he relies on the following language in footnote 11 in *Stevens:*

"The suggestion that we should remand the case to the New York courts for a finding of whether or not petitioner was misled is, we think, wide of the mark. A State must affirmatively demonstrate to the witness that a valid immunity from prosecution is his before it may hold him in contempt for refusing to answer questions that would otherwise be incriminating. Whether the State has met its burden must be measured at the time of the alleged contempt. A declaration that there was a valid immunity uttered for the first time on appeal would come too late."

We think appellant misreads *Stevens.* Of course the "burden" must be measured at the time of the alleged contempt. But the "burden" the United States Supreme Court alluded to in *Stevens* was whether any grant of immunity was in fact made, not the legal construction of its scope, nor the specific proceedings to which it applied. These were and remain, and of necessity by the nature of things have to be, matters of judicial construction. We do

---

[7] CLS 1961, § 767.6 (Stat Ann 1954 Rev § 28.946), see footnote 4, *supra.*

not interpret *Stevens* to mean that a grand jury witness can vitiate the express terms of the immunity provision of the statute by a subjective declaration that the grand juror did not "demonstrate" to his satisfaction that the immunity offered extended to a specific proceeding then in being or to some possible proceeding in the future. The argument, while ingenious, is not supported by the language relied upon. Neither *Raley* nor *Stevens* requires more than was done here—merely that the grand juror advise the witness of the existence of immunity if immunity be, in fact, granted.

### III.

Finally, we come to appellant's contentions that this State's one-man grand jury law violates the separation of powers doctrine, as set forth in Const 1963, art 3, § 2, and the due process clause of the Fourteenth Amendment.

### A.

In this country it is not normally the function of a judge to investigate the occurrence of crime. That function normally is performed by the executive branch of government as part of its duty to enforce the laws. Experience has demonstrated, however, that regularly constituted law enforcement agencies sometimes are unable effectively and lawfully to enforce the laws, particularly with respect to corrupt conduct by officers of government and conspiratorial criminal activity on an organized and continuing basis. Our experience also has demonstrated that the common-law 23-man grand jury is unwieldy and ineffective for the investigation of such crimes in a modern, industrialized, and mobile society.[8] It has

---

[8] Even in 1850 the common-law grand jury was subjected to devastating criticism. See Constitutional Convention Debates, 1850, re-

demonstrated also that corruption in government and organized crime are susceptible to discovery and prosecution if the investigative body has the power to compel some participants therein to testify by enforcing attendance of witnesses by subpoena and granting immunity from prosecution, but police agencies in this country do not possess such extraordinary power. The ineffectiveness of the common-law grand jury considered, and absent the power lawfully to compel testimony, police agencies are thwarted too frequently, for society's safety, in their efforts to investigate such criminal activity. Traditionally in this country, such extraordinary power has been entrusted only to judicial officers. Absent constitutional authority therefor, such essentially judicial power cannot be granted validly to police agencies without violating the separation of powers provision of our Constitution. Const 1963, art 3, § 2.

This dilemma has been resolved in this State by its unique one-man grand jury, comprised of a judicial officer who can properly exercise the subpoena power and the power to grant immunity in order to compel testimony. Appellant, however, contends that a judicial officer cannot also perform investigative duties without violating the separation of powers mandate of Const 1963, art 3, § 2.[9] That constitutional provision, however, contains a significant exception, "except as expressly provided in this Constitution." In article 6, § 29,[10] we find

marks by Delegates Sullivan (pp 54, 55), Pierce (pp 55, 56) and McLeod (pp 197–201). The constitutional language concerning the common-law grand jury was deleted in 1850, although the legislature has perpetuated the institution. (CL 1948, §§ 767.7–767.25 [Stat Ann 1954 Rev §§ 28.947–28.965].)

[9] "The powers of government are divided into three branches; legislative, executive and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this Constitution."

[10] "Justices of the supreme court, judges of the court of appeals,

that circuit judges are among those judicial officers granted the powers of conservators of the peace. If conservators of the peace possessed the powers now exercised by circuit judges as one-man grand jurors, *whether executive or judicial in nature,* the exercise of such powers would not violate article 3, § 2, either because they are judicial in nature or because, if executive, they are expressly authorized by article 6, § 29 and, thus, within the exception stated in article 3, § 2. We find, for reasons to be stated, that conservators of the peace at common law possessed the power to investigate crime for the purpose of apprehending offenders. We hold, therefore, that circuit judges now possess such investigative power, as conservators of the peace, and their exercise of such power in the performance of duties as one-man grand jurors does not violate Const 1963, art 3, § 2.

The nature of the conservator's power was considered by this Court in *In re Slattery* (1945), 310 Mich 458, in another unsuccessful challenge to the constitutionality of our one-man grand jury law. A few years earlier, in *In re Sanderson* (1939), 289 Mich 165, the Court traced the historical development of the office of conservator of the peace from its origin in England to its ultimate merger in the office of justice of the peace. Little more need be added to what was written in *Slattery* and *Sanderson* in support of the conclusions we have reached, conclusions which are consistent with those to be found in those two cases.

Taswell-Langmead's English Constitutional History (11th ed, Theodore F. T. Plucknett), summarizes this historical development:

circuit judges and other judges as provided by law shall be conservators of the peace within their respective jurisdictions."

"Conservators of the peace. In the appointment
of knights to receive the oaths may probably be
discerned the germ of the office of conservator,
later justice, of the peace. *Custodes pacis* were
assigned in 1252, 1253 and 1264 and from 1285
were closely associated with the enforcement of the
Statute of Winchester. They afterwards appear to
have been occasionally chosen by the landholders of
the county, but were finally appointed to their office
by the royal writ or commission. Their constant
function was to take indictments of felonies and
misdemeanours, and to hold the accused until trial
by royal judges. In 1329, 1332, 1338, and from 1350
to 1364 they were given powers to try their pris-
oners, and this became permanent in 1368. Their
early functions of supervising the militia were soon
transferred to separate commissions of array, but
after the Black Death they frequently dealt with
the new labour and price-control legislation. The
local courts paled before them, the sheriff became
their servant, and parliament (where many J.P.s
sat in the House of Commons) constantly confided
new and important tasks to them." (p 126.)

"The principal organ [of county government] in
fact had come to be the justices of the peace. Their
early history has already been mentioned; as time
went on their duties were immensely increased by
statute, not only in the sphere of criminal adminis-
tration but also in that of poor law and general local
government. A vast and confused mass of legisla-
tion which defies analysis conferred wide and very
miscellaneous powers." (pp 685, 686.)

Another historian, discussing criminal jurisdic-
tion in England, reports these conclusions about the
office of justice of the peace:

"The remedy was found in the office of justice of
the peace. This office has late twelfth-century
origins, but the important steps were taken in the
fourteenth century. A statute provided that
'worthy' men were to be appointed to keep the peace

and hear and determine felonies. Further statutes enacted that they were to hold their sessions four times a year. Before these statutes these worthy men were more conservators of the peace than justices; the duty of hearing and determining felonies made them 'justices of the peace', or more simply 'justices'. *   *   *

"The powers of justices were extended somewhat in the fifteenth century, and increased greatly in the sixteenth century. *   *   * *Thirdly*, the justices were instructed to hold preliminary inquiries into allegations of crime that might lead to trial at assizes or quarter sessions. This was in the nature of police powers in 'getting up' a case, not really a judicial activity and suitable only for a society that lacked an adequate police force. No substantial change took place until the middle of the nineteenth century." The Machinery of Justice in England, R. M. Jackson, LLD (4th Ed 1964), at pp 92, 93.

History adds weight to the reasoning of Justice Butzel's opinion in *Slattery*. Conservators of the peace, historically, were empowered to make investigations and "get up" a case. Circuit judges, possessing the conservator's powers by virtue of article 6, § 29, therefore, do no violence to our separation of powers doctrine, article 3, § 2, by exercising such powers of investigation as one-man grand jurors.

While we recognize that in *Slattery* this Court said that a judge conducting a one-man grand jury proceeding acts in a judicial capacity, 310 Mich at 467, we do not believe it necessary to re-examine that question in this case. We mention the matter only because appellant asserts, without citing any supporting authority, that if grand jury proceedings are not judicial, appellant cannot be held in contempt. Whether a circuit judge acts in a judicial capacity or in an executive capacity as grand juror, there is no constitutional bar to the legislature's

providing by law, as ours has, that a witness who fails to answer questions asked of him may be punished for contempt, *the contempt proceedings to be conducted in public by another judge and not by the grand juror.* Such procedure customarily is followed in enforcing by contempt process refusals to obey lawful orders of disclosure made by agencies of the executive branch of government. See *Penfield Company of California* v. *Securities and Exchange Commission* (1947), 330 US 585 (67 S Ct 918, 91 L ed 1117). See, also, *Interstate Commerce Commission* v. *Brimson* (1894), 154 US 447, 485, 486 (14 S Ct 1125, 38 L ed 1047).

The debates of the recent constitutional convention which produced our Constitution of 1963 disclose that the delegates considered omitting from the new Constitution all reference to the conservators of the peace. Indeed, the convention's judiciary committee so recommended, but when it was brought to the delegates' attention in debate that omission of the grant to judges of conservator's powers might affect adversely the validity of our one-man grand jury law, the delegates voted to include in their final proposal the language which now appears as Const 1963, art 6, § 29. The official record of the convention's proceedings reports the following introductory comment on the "conservator" proposal by the chairman of the convention's judiciary committee:

"MR. DANHOF: Mr. President, members of the convention, some time back, we had an exclusion report to strike the provision in the 1908 Constitution which made the Supreme Court judges, the circuit judges and the justices of the peace conservators of the peace within their respective jurisdiction. I might state at the time we considered this matter, none of the attorneys nor the circuit judges serving on my committee could see any par-

ticular advantage to the section, nor did research indicate that there was any reason that it be retained. The governor's advisory committee likewise recommended its removal. But we received a letter from Detroit from Circuit Judge Joseph Sullivan in which he brought to our attention a case involving the validity of the one-man grand jury system in the State of Michigan.[11] In this particular case, the question was on the validity of the one-man grand jury and Justice Butzel, writing the majority opinion of the court, pointed out the difference between Michigan and New York, and the reason why Michigan could sustain a one-man grand jury system and why New York could not. And one of the items which Justice Butzel referred to constantly in about 3 pages of his opinion was the fact that circuit judges by the Constitution of 1908 were authorized to be conservators of the peace and that their duties and functions sitting as a grand jury would be within this particular section. Now, the odd part of it is that he went on to state that even in spite of this provision, he did not feel that sitting as a one-man grand jury was a nonjudicial function. But in going over it with Mr. Joiner and other members of the staff, and in talking with Mr. Ford, we came to this conclusion: that we should not endanger the one-man grand jury system; that if it is to be abolished, it should be abolished by the agency and the body which created the one-man grand jury system, namely, the legislature, and that we would not be worried if Justice Butzel had not spent approximately 3 pages of the opinion pointing out that Michigan could have a one-man grand jury system while New York could not because we had this provision making the judges conservators of the peace.

"Now, we have amended it slightly to read Supreme Court, Court of Appeals and circuit judges and other judges as provided by law, so that the

---

[11] *In re Slattery* (1945) 310 Mich 458.

legislature, if it deems, in its wisdom, to have the judges of courts of limited jurisdiction be conservators of the peace, it can so do. The committee considered this at the time that it was brought before the committee. We had about 14 people. We got 10 votes in favor. Eleven are needed on a committee proposal. I did not get the 11. However, Mr. Ford was absent. He joined with me in this particular amendment. We would urge the adoption thereof." 2 Constitutional Convention 1961 Record, p 2703.

In addition to the chairman of the convention's judiciary committee, others expressed the view that if the State's one-man grand jury system were to be changed, it should be accomplished by the legislature. The convention then approved the "conservator" clause by a 58–55 margin. Shortly afterward, a delegate specifically proposed a clause to be added to the article on the judiciary, to provide as follows:

"One-man grand juries are hereby abolished." The proposal was defeated, 73–32. 2 Constitutional Convention 1961, Record, pp 2709, 2710.

The significance we place upon the foregoing actions of the constitutional convention is that the delegates correctly regarded the "conservator" clause important to the constitutional validity of our one-man grand jury law. When the convention and, thereafter, the people of this State approved the document that was to become the Constitution of 1963, including both the "separation of powers" clause (article 3, § 2) and the "conservator" clause (article 6, § 29), they declared in legal effect that a judge exercising the powers of a conservator of the peace was not thereby violating the separation of powers clause.

## B.

Relying generally upon Mr. Justice Rutledge's concurring opinion in *In re Oliver* (1949), 333 US 257 (68 S Ct 499, 92 L ed 682), appellant invites our reconsideration of the constitutionality of Michigan's one-man grand jury law. It is his claim that our law is incompatible with current concepts of due process, citing recent United States Supreme Court decisions[12] applying guarantees of the Fourth, Fifth and Sixth Amendments of the United States Constitution to the States by incorporation into the due process clause of the Fourteenth Amendment. In *Oliver* a contempt conviction under the then Michigan grand jury statute was reversed, but not on the ground contended for by Mr. Justice Rutledge. In short, the Rutledge opinion suggests the unconstitutionality of the statute and postulates that the majority opinion in that case demonstrated how far the Federal Supreme Court (p 280) "departed from our constitutional plan when, after the Fourteenth Amendment's adoption, it permitted selective departure by the States from the scheme of ordered personal liberty established by the Bill of Rights. In the guise of permitting the States to experiment with improving the administration of justice, the Court left them free to substitute, 'in spite of the absolutism of continental governments,' their 'ideas and processes of civil justice' in place of the time-tried 'principles and institutions of the common law' perpetuated for us in the Bill of Rights. Only by an exercise of this freedom has Michigan been enabled to adopt and apply her scheme as was done in this case."

---

[12] *Mapp* v. *Ohio* (1961), 367 US 643 (81 S Ct 1684, 6 L ed 2d 1081, 84 ALR2d 933); *Gideon* v. *Wainwright* (1963), 372 US 335 (83 S Ct 792, 9 L ed 2d 799, 93 ALR2d 733); *Douglas* v. *California* (1963), 372 US 353 (83 S Ct 814, 9 L ed 2d 811); and *Malloy* v. *Hogan* (1964), 378 US 1 (84 S Ct 1489, 12 L ed 2d 653).

After paying tribute to Mr. Justice Rutledge's foresight, appellant then urges that the quoted language is (or at least should be) considered the present view (though not yet expressed) of the present United States Supreme Court. This conclusion, it is urged, can be reached by a process of judicial osmosis. While acknowledging that the law as originally enacted, in 1917, has been amended from time to time to correct potential evils disclosed by court decisions, appellant contends that the law still reposes in the one-man grand jury such "awful authority" that we should strike it down as violative of our current concepts of due process.

Judicial declarations of statutory unconstitutionality we think should be made of sterner stuff. We cannot, by the suggested process, strike down a presumptively constitutional legislative act. The fact is that the one-man grand jury law, as it appears on our statute books today, is very much different from that which heretofore has been reviewed for constitutional validity by this Court and by the United States Supreme Court in *In re Oliver, supra.*

Today, a witness called before the grand juror is entitled to the presence and assistance of counsel in the room where he is being examined. CL 1948, § 767.3, as amended by PA 1965, No 251 (Stat Ann 1965 Cum Supp § 28.943). The grand juror no longer may act as the examining magistrate at a hearing on a complaint or indictment resulting from the inquiry,[13] nor may he hear any motions to dismiss or quash any such complaint or indictment; he may not hear any charge of contempt arising out of the inquiry,[14] except for neglect or refusal

---

[13] A practice the statute allowed formerly and upheld in *People* v. *McCrea* (1942), 303 Mich 213, 247, 248. See, also, September 1948 Michigan State Bar Journal, p 66 (vol xxvii, No 9).

[14] See *In re Oliver* (1947), 318 Mich 7, reversed (1949), 333 US 257 (68 S Ct 499, 92 L ed 682), and *In re Murchison* (1954), 340 Mich 151, reversed (1955), 349 US 133 (75 S Ct 623, 99 L ed 942).

to appear in response to a summons or subpoena issued by him; and he may not preside at a trial resulting from the inquiry. CLS 1961, § 767.4 (Stat Ann 1954 Rev § 28.944). No longer does the statute permit a grand juror to search out criminal conduct generally[15] but, instead, it requires the order authorizing the inquiry, and the complaint upon which such order is based, to "be specific to common intent of the scope of the inquiry." CL 1948, § 767.3, as amended by PA 1965, No 251 (Stat Ann 1965 Cum Supp § 28.943). Moreover, to forestall abuse of witnesses by grand jury staff personnel, the statute now prohibits the taking of any testimony in the absence of the grand juror and it requires that, upon arrival of a witness in response to a subpoena, the grand juror be notified thereof forthwith and that he forthwith take the witness' testimony. CL 1948, § 767.3, as amended by PA 1965, No 251 (Stat Ann 1965 Cum Supp § 28.943). The statute, despite an early interpretation,[16] has permitted the grant of immunity to a witness who invokes his privilege against self-incrimination and the scope of the immunity granted, as we have noted above, is as broad as the privilege itself. CLS 1961, § 767.6 (Stat Ann 1954 Rev § 28.946). Finally, to reduce the risk of unwarranted damage to the reputations of witnesses appearing before the grand juror, as well as to enhance the likelihood of the inquiry's success, proceedings before the grand juror are prohibited from disclosure by any person participating therein as an official or as a witness or counsel for a witness, except when necessary in judicial proceedings or in disciplinary proceedings against an attorney, and violation of such require-

---

[15] Another practice the statute allowed formerly and upheld by an equally divided court in *People* v. *St. John* (1938), 284 Mich 24, 27, 28.

[16] *People* v. *Willson* (1919), 205 Mich 28, 43, 44.

ment of secrecy constitutes a misdemeanor punishable by fine and imprisonment. CLS 1961 § 767.4 (Stat Ann 1954 Rev § 28.944).[17] The statute specifically provides that the transcript and record as to any witness be made available to him when rele-

---

[17] On December 9, 1966, this Court issued the following order directed, by its terms, to all judges of courts of record "now conducting or hereafter authorized to conduct" proceedings under our one-man grand jury law, to assure full compliance with the secrecy provisions of the statute:

"STATE OF MICHIGAN
IN THE SUPREME COURT

"In the Matter of
One-Man Grand Jury Proceedings

"*To All Judges of Courts of Record:*

"On this Court's own motion, all judges now conducting or hereafter authorized to conduct one-man grand jury proceedings hereby are directed to order all members of their grand jury staffs and other persons admitted to such inquiries to comply fully with the following provisions of CLS 1956, § 767.4 [Stat Ann 1954 Rev § 28.944]:

" 'Except in cases of prosecutions for contempt or perjury against witnesses who may have been summoned before the judge conducting such inquiry, or for the purpose of determining whether the testimony of a witness examined before such judge is consistent with or different from the testimony given by such witness before a court in any subsequent proceeding, or in cases of disciplinary action against attorneys and counselors in this state, any judge conducting such inquiry, any prosecuting attorney and other persons who may at the discretion of such judge be admitted to such inquiry, who shall while conducting such inquiry or while in the services of such judge or after his services with such judge shall have been discontinued, utter or publish any statement pertaining to any information or evidence involved in any such inquiry, or who shall disclose the fact that any indictment for a felony has been found against any person not in custody or under recognizance, or who shall disclose that any person has been questioned or summoned in connection with any such inquiry, or who shall disclose or publish or cause to be published any of the proceedings of such inquiry otherwise than by issuing or executing processes prior to such indictment, or shall disclose, publish or cause to be published any comment, opinion or conclusions related thereto, shall be guilty of a misdemeanor punishable by imprisonment in the county jail not more than 1 year or by a fine of not less than $100.00 nor more than $1,000.00 or both such fine and imprisonment in the discretion of the court, and such offense when committed by a public official shall also constitute malfeasance in office.'

"The foregoing direction of full compliance with section 767.4 shall apply equally to the judges performing duties as grand jurors. Any violations hereof shall be deemed to be contempt of this Court.

Sgd. THOMAS M. KAVANAGH
—————————
Chief Justice

"Dated: December 9, 1966"

vant to any appeal or other judicial proceeding.
CLS 1961, § 767.6a (Stat Ann 1954 Rev § 28.946[1]).

However deficient this State's one-man grand jury
statute once may have been, when measured against
now recognized standards of due process, appellant
has failed to persuade us that, as now written, it
denies due process.

We find the present statute meets all of the re-
quirements of the Michigan Constitution of 1963
and the Constitution of the United States. No
rights of appellant guaranteed thereby have been
denied him. The judgment of contempt entered by
the Wayne circuit court and the sentence imposed
pursuant thereto are affirmed. No costs, constitu-
tional issues being involved.

DETHMERS, C. J., and BLACK and BRENNAN, JJ.,
concurred with SOURIS and O'HARA, JJ.

ADAMS, J. (*concurring*). I join in the opinion of
Justices SOURIS and O'HARA except for section III-A
of said opinion. As to the question of separation
of powers, I believe that the decision of this Court
in *In re Slattery* (1945), 310 Mich 458, that a judge
conducting a one-man grand jury proceeding acts
in a judicial capacity, is controlling and disposes
of this question.

KELLY, J., concurred with ADAMS, J.

T. M. KAVANAGH, J. (*concurring*). I concur in the
result reached in the opinion of Justices SOURIS and
O'HARA, except that I limit such concurrence with
reference to the separation of powers question to
the decision of this Court in *In re Slattery,* 310 Mich
458, which held that a judge conducting a one-man
grand jury proceeding acts in a judicial capacity.